WHITE RIVER LOG & BOOMING CO. v. SWEN NELSON.

*Floating Logs—Injury to riparian owners by overflowing banks.*

In an action against a booming company for injury to plaintiff's land resulting from jams of logs and consequent overflows, a charge is erroneous which assumes that the company is an insurer against such injuries, and which makes no account of evidence tending to show that some of the overflows were caused by extraordinary rainfalls.

A booming company is not liable for damages caused to riparian owners by a proper and reasonable use of the right of floating logs; but it is liable if by wilful or negligent mangement it creates or enlarges jams in the stream and thereby overflows its bank to their injury.

The rights of the public to run logs in a navigable stream are not subordinate to the rights of riparian owners, but are concurrent, and each must be exercised without unnecessarily interfering with the other and without negligence.

Error to Muskegon. Submitted Jan. 26. Decided April 13.

CASE. Defendant brings error. Reversed.

*Smith, Nims, Hoyt & Erwin* for plaintiffs in error.   The right to float logs on navigable streams is recognized in *Lorman v. Benson* 8 Mich., 32; *Middleton v. Flat River Boom Co.* 27 Mich. 533; *Brig " City of Erie" v. Canfield* id 482; *Thunder Bay River Boom Co. v. Speechly* 31 Mich. 344; *Atty-Gen. v. Evart Boom Co.* 34 Mich. 462; the right of navigation is paramount to all others: *Moore v. Sanborne* 2 Mich. 526; *Brown v. Chadbourne* 31 Me. 9; *Treat v. Lord* 42 Me. 552; *Morgan v. King* 35 N. Y. 458;

the question what is a reasonable use of a right depends on the subject matter and the circumstances : *Davis v. Winslow* 51 Me. 295 ; *Michigan Central R. R. Co. v. Coleman* 28 Mich. 440 ; *Underwood v. Waldron* 33 Mich. 239 ; *Scripps v. Reilly* 38 Mich. 27 : *Weise v. Smith* 3 Or. 445 : 8 Amer. 621 ; whatever injury is incidental to the reasonable use of the water of a running stream is *damnum absque injuria :* Cooley on Torts, 585 ; right of passage upon public highways is subject to such incidental, temporary or partial obstruction as manifest necessity requires : *Clark v. Fry* 8 Ohio St. 358 ; *Fisher v. Thirkell* 21 Mich. 21 ; *Haight v. Keokuk* 4 Ia. 214 ; Whart. Negligence § 518 ; *Mich. Cent. R. R. v. Anderson* 20 Mich. 244 ; the right to build sawmills on running streams is not destroyed by the fact that they injure the water : Cooley on Torts 588 ; *Snow v. Parsons* 28 Vt. 459 ; *Hayes v. Waldron* 44 N. H. 580 ; *Merrifield v. Worcester* 110 Mass. 216 ; *Burroughs v. Housatonic R. R.* 15 Conn. 124 ; when there is neither negligence nor folly in doing a lawful act, the person doing it is not liable for the consequences : *Clark v. Foot* 8 Johns. 421 ; *Panton v. Holland* 17 Johns. 92 ; *Thurston v. Hancock* 12 Mass., 220 ; *Bachelder v. Heagan* 18 Me. 32 ; *Vaughan v. Taff Vale Ry Co.* 5 H. & N. 679 ; *Dunn v. Birmingham Canal Co.* L. R. 7 Q. B. 244 : 1 Eng. 283 ; *Nichols v. Marsland* 10 Exch. 255 : 14 Eng. 538 ; *Holmes v. Mather* L. R. 10 Exch. 261 : 14 Eng. 548 ; an overflow of land caused by a jam of an unusual quantity of logs in a boom but without the fault of its owner does not render the owner liable : *Lawler v. Baring Boom Co.* 56 Me. 443.

*Stephenson & McLaughlin* for defendant in error.

GRAVES, J.  Nelson, being a riparian owner on White River, brought this action on the case for certain damages alleged to have been caused by the Booming Company.  He claimed that a distinct but exactly similar injury was committed in each of the years 1873, 1874, 1875, 1876, 1877 and 1878, and employed a separate count for each year.  The

only variation in the counts was in the year in which the injury was alleged to have been done, and a reference, therefore, to the first will suffice for all the others. The actionable fault imputed to the Booming Company is charged in this wise—that "well knowing the premises but contriving and intending to injure and prejudice the plaintiff in this behalf, heretofore, to wit: On the first day of May, A. D. 1873, at the township of Whitehall, the county of Muskegon aforesaid, and divers other days and times afterwards, and before the commencement of this suit, with certain booms, timber, logs, boards, pins, poles, wood, ropes and chains, and other appliances, *dammed up and obstructed* the running and flowing of the waters of said White River as the same had run and flowed and still ought to run and flow, and thereby caused the waters of said White River to flow upon and cover the aforesaid lands of the said plaintiff, and to stand and remain upon the aforesaid lands of the plaintiff for a long space of time, to wit: for the space of five months, and thereby destroyed the aforesaid products, pasture, meadow and growing crops and improvements of said plaintiff, and greatly injured the said lands and the timber thereon, and prevented the plaintiff from, and deprived him of, the use, tillage and cultivation thereof, and depriving him of the products, produce and income and profits of said lands, whereby the said plaintiff has lost and been deprived of a great number, to wit, five hundred tons of hay," etc.

Complaint is made that these various counts overlap, and that a claim is set up for repeated recoveries on account of the same flowage. But this is a misapprehension. It was the obvious design of the pleader to describe a flowage through a certain specified period of time in each year (Gould's Plead. ch. 3 § 85), and to effect this object he resorted to the expedient of a separate count for each year. The declaration may show that in this regard it is not framed with perfect accuracy and that there exist some formal imperfections. But there is nothing substantial; nothing which may be taken advantage of by exception. It is further objected that as to the several injuries alleged to have been

committed in the years preceding 1877 the action was barred
by Comp. L. § 7149, which limits the bringing of actions for
trespass on land to two years after the accruing of the cause
of action:   There is no foundation for the point.   The action
is case for consequential damages, and not trespass, and the
Legislature has seen fit to authorize case to be brought except
in certain instances, of which this is not one, at any time in
six years.   Comp. L. § 7148 subd. 7.

The plaintiff's evidence was in substance that in each of
the years mentioned, the Booming Company dealt in such
manner with the masses of logs running in the river that at
the sorting ground below the plaintiff they were arrested and
turned into jams, which caused the water to dam up and
overflow his land and cut off certain of his crops and preclude
him from making and getting others.   And on the part of
the Booming Company the evidence was aimed to show that
part of the overflow complained of was caused by heavy rain-
falls, and that considering the great quantity of logs which
were put afloat by the various persons who engaged therein,
and considering the absence or almost entire absence of river
banks, and some other conditions, there was no practicable
way for getting the logs to their destination with any less
overflow of plaintiff's land than actually occurred.

When the judge came to charge the jury he laid down the
duty of the Booming Company in these terms: "This cor-
poration has a duty to perform, that is, to drive the logs down
with ordinary care so as not to injure any of the parties who
may own land along the stream or adjacent thereto.   It is
their duty to furnish a sufficient amount of men to drive
those logs down the river, without injury to those owning
land along and adjacent to the stream, and so far as this case
is concerned they were to drive the logs along the plaintiff's
land so as not to injure the land or crops; it doesn't matter
whether there is one hundred million or a thousand million;
they must navigate it in such a manner as not to injure those
who own lands along the stream, that is, they must put on a
sufficient force to pass those logs down the surface of that

stream without injury to the plaintiff in this case." The jury found for the plaintiff below in the sum of $400.

So much in these controversies depends on circumstances which may vary indefinitely that it is not practicable to lay down a specific rule applicable to all occasions, places and conditions, as to the duty which may be fairly due to riparian proprietors from the corporations and such private persons as may be engaged in using streams for these immense lumbering operations. The subject is one of considerable difficulty in any case, and, unless the question be confined to a given state of facts, it would be rash to hazard any other than very general views. According to the present record the facts appear to be neither numerous nor intricate and the inquiry seems to be restricted to narrow limits. Premising therefore that in what is said strict reference is made to the case actually presented, it remains to state with as much brevity as practicable the opinion entertained.

The charge given is not correct. It was likely to lead the jury to suppose that the Booming Company was in the condition of an insurer and bound at all hazards to guard the plaintiff against loss arising from the presence of the logs in the river; and of course there is no foundation anywhere for such a doctrine. No notice was taken of the evidence for the Booming Company that some of the overflows were caused by extraordinary rainfalls, and finally the drift of the instruction was not adapted to the case. The view which the facts called for in my judgment may be thus stated: As between the plaintiff and the Booming Company it was the duty of the company to see that its connection with the logs did not result in causing any more flowage of the plaintiff's land than would occur by the passage of the logs in a purely natural way. It had no right to deal with them in any mode whereby jams would be formed or enlarged so as to cause the water to overflow the plaintiff's land when it otherwise would not; or cause it to overflow there more than it would were the logs left to themselves; and if jams were formed or enlarged in that way to such extent that they did cause the water to flow the plaintiff's land the company is liable for all

that flowage beyond what the flowage would have been, if any, had the logs been allowed to float down naturally and without artificial interference. It may be objected that this affords an uncertain criterion; because it cannot be known what the consequences would have been in case the Booming Company had had no connection of any sort with the logs. And it is true that the element of uncertainty exists. But that is no reason for rejecting the rule unless a better one can be found. It is not admissible to wholly deny redress because there is infirmity in the method, and on the other hand, it is equally inadmissible to make this imperfection an excuse for compelling the company to pay damage which it never had any agency in causing. The uncertainty referred to is no greater nor more embarrassing than is often met with where estimates of damage are to be made, and where such difficulties are never allowed to stand in the way. Actions for injuries to health, to reputation, and for injuries which reach forward into the future, and the like, will exhibit conspicuous examples. · In such cases the jury must apply their common sense and experience to the whole facts and act on the rule of probability. No rule more safe or practical is discerned to exclude all ground of damage not chargeable to the company and at the same time allow the plaintiff whatever damage he ought to have from it. The other points were abandoned.

I think the judgment should be reversed with costs and a new trial granted.

·Cooley, J. I agree with Mr. Justice Graves that the instructions given to the jury in this case were erroneous. I also agree that if the Booming Company so dealt with the logs in the stream as to cause jams to be formed or enlarged, and thereby to raise the water in the stream to the injury of the plaintiff, the company must be held responsible for the resulting damages. But if the company only makes use of the right of floatage in a proper and reasonable way and without negligence, it is not responsible even though some injury may be suffered by the riparian owner. The rights of the

public to run logs in the stream are not subordinate to those of the owner of the bank, but they are concurrent, and each must be enjoyed reasonably, and without any unnecessary interference with the enjoyment of the other, and without negligence. But this is all that can be required. No man can be punished in damages for an enjoyment of his undoubted rights, when he acts reasonably and with prudence.

MARSTON, C. J. concurred.

CAMPBELL, J. I do not feel quite satisfied that the charge of the court in this case was designed to convey so extreme a doctrine as would hold plaintiffs in error responsible for injuries to which they did not contribute. But as the language has impressed my brethren as leading to that inference, I do not feel justified in holding that it will not properly bear that construction, and concur in a reversal. I am not prepared on this record to lay down any specific rule, as the testimony is not completely given.