ELIZABETH BAUMAN v. THE PERE MARQUETTE BOOM COMPANY.

*Logs and logging—Injury to riparian proprietors—Negligence.*

1. In a suit to recover damages for flooding plaintiff's land by the use of a dam in driving logs, it appeared that during the years covered by the declaration other parties than the defendant had made like use of *other* dams owned by them on the same stream and its tributaries, and the testimony failed to distinguish the several floods; but defendant's testimony tended to show the *number* of floods raised by defendant, and the *season* of the year when so raised.

   *Held,* that defendant was not liable for damages caused by the floods raised by *other* parties, but that the testimony as to the *number* of floods raised by the defendant, and the *season* of the year when raised, afforded some *data* from which the jury could estimate the damage caused by *defendant's* floods.

2. Persons putting logs into a navigable stream, or causing the same to be done, are liable to riparian proprietors for injury to their lands and crops caused by log jams raising the water to such an extent as to overflow said lands.

3. A corporation formed for the purpose of running and driving logs cannot be held liable for injury to riparian proprietors, caused by log jams, unless, by the exercise of due care, the formation of such jams could have been prevented; but, it being its duty to exercise due diligence in running logs, and in breaking jams formed by natural causes, it is liable for such damages as may arise from unnecessary or unreasonable delay in removing such jams.

4. If a log-driving company, with knowledge of the existence of log-jams, and its inability to remove same, adds to the jam by running logs onto such jam, and thereby injures land-owners, it is liable for the damages caused by such action.

Error to Lake. (Judkins, J.) Argued June 17, 1887. Decided June 23, 1887.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Wing & Samuels,* for appellant.

*Withey & Smurthwaite,* for plaintiff.

CHAMPLIN, J.   The plaintiff owns land bordering upon the North Branch of Pere Marquette river, which she claims was overflowed and injured by the acts of defendant in running and driving logs in the river.

The declaration contains two counts,—one in trespass, and the other in trespass on the case.

The wrong done to the plaintiff is charged to have been committed as follows:

1. The defendant wrongfully and unjustly put and placed in said stream large quantities of saw-logs and timber, and ran and floated the same down and in the stream, and through, upon, and over the land of plaintiff, in so negligent, careless, and improper a manner that the logs became jammed in the stream below plaintiff's lands, and prevented the free flow of the water of the stream, and caused it to be set back, causing the injury complained of.

2. The defendant carelessly, negligently, and willfully allowed the said logs and timber to remain jammed as aforesaid for a long space of time during each agricultural season, to the destruction of plaintiff's crops and injury to her land.

3. The defendant, in order to break such jams, did, by means of certain dams upon said stream and the branches thereof, above plaintiff's lands, shut off and dam the natural flow of water, and thereby raise large volumes, which it let off suddenly, and thereby increased the volume of water naturally flowing in the stream, causing the same to overflow the banks thereof, and injure the crops and lands of plaintiff in the manner described in her declaration.

The testimony showed conclusively that defendant had not placed any saw-logs or timber in the stream, but was engaged in running and driving logs placed in the stream by others.   Defendant's liability, therefore, if any existed, arose either from its negligence in driving and running logs, or in causing floods in the stream, by which plaintiff's land was overflowed.

As to flooding, the evidence showed without contradiction that the defendant owned but one dam on the stream above plaintiff's land, and had used that but a few times in each of the years included in the declaration; that other persons had

dams on the stream or its tributaries above plaintiff's land, which they use for their own private purposes in flooding. The court very properly instructed the jury that defendant would not be liable for damages caused by these floods of other parties, but only for such damages, if any, as were caused by the floods raised by defendant. There was no testimony which distinguished the floods raised by defendant from those of the several other owners of dams who were raising floods during the time alleged in the declaration. Defendant's testimony, however, tended to show the number of floods raised by defendant, and the season of the year, and this afforded some *data* from which the jury could estimate the damage caused by defendant's floods.

The other overflowing of plaintiff's lands, and consequent injury, was caused by backwater from the logs forming jams in the stream. It was taken as a conceded fact that this stream was navigable in the sense in which that term is used in this State, and was capable in its natural condition, of floating saw-logs from plaintiff's land to its mouth.

The testimony shows that, where there is a bend in the stream of the size and character of the North Branch of the Pere Marquette river, the current is retarded and the water slackened; and when a considerable number of saw-logs are thrown promiscuously into the stream, and suffered to float down with the current, the natural tendency is for the logs when they enter the slack water to form a jam; and the same thing occurs when the current is impeded by a sand-bar, extending across or nearly across the bottom of the stream. The effect of these jams is to dam the water, and set it back to a higher level than it would be in its natural state, and if such jams raised the water to such extent as to set back upon and overflow the land of riparian proprietors, to the injury of their land or crops, those who put the logs in the stream, or caused it to be done, would be liable for such consequential damage. This is because the jamming is the

natural consequence of floating logs down the stream in this manner, and the result ought to be known by those who employ this method of "navigation."

But the boom company, or corporations formed for the purpose of running and driving the logs, cannot be held liable for damages caused by jams formed in this manner, unless, by the exercise of due care, the formation of such jams could have been prevented. It being their duty to exercise due diligence in running the logs, and in breaking such jams as are formed by natural causes, they would be liable for such damage as may be caused from unnecessary or unreasonable delay in removing them. They are required to use due diligence, and to employ such number of men and means as will accomplish the purpose of breaking such jams within a reasonable time, having in view all the circumstances.

It appears from the testimony that there existed several miles below plaintiff's land a sand-bar in the bed of the stream, upon which the logs floating down would naturally form a jam; that this sand-bar greatly impeded defendant in its work of driving logs, and retarded the running of logs; that defendant employed all the men it could at this point, and used its best efforts to keep the jams formed there broken, and the river clear for the passage of logs. Notwithstanding this, a jam of logs was formed at this bar, which extended back up the river for a long distance, and nearly to plaintiff's land.

It also appears that during the winter of 1886, the defendant, in order to facilitate its business, and furnish space for logs to float down the river belonging to an owner of logs who placed them in the river below plaintiff's land, cut a channel in the ice, but before it was completed the ice in the river was removed by a thaw. The logs thus put in floated down stream, but did not pass over the sand-bar, but

formed a part of the logs which filled the stream nearly to plaintiff's land.

The counsel for defendant concede that the charge as given did, in a general way, lay down the rule of law correctly to the jury; yet they claim that "the trend and effect of the charge is that damages of some kind were to be allowed." We discover no such trend or effect to the charge of the court as given. He did not trench upon the province of the jury, and the evidence would justify a judgment in plaintiff's favor, based upon the flooding, without other evidence, for some damages, at least nominal.

The defendant also assigns error upon the charge of the court made after the jury had retired to deliberate, and had returned to the court for further instructions. What then transpired we quote from the record as follows:

"*The Court.* Gentlemen of the jury, I understand you have not agreed?

"*A Juror.* There is a misunderstanding betwixt us on account of the charge you gave as to the cutting of this ice up there, and letting the logs down in the winter time against this jam of logs that was below; and as to the boom company using all diligence to get these logs out of the way in the spring of the year,—these logs which they had run down in the winter time. Do you mean to instruct the jurors that the boom company were liable for the damage that those logs done in the spring or summer time, when they used all the diligence they could to get the logs out of the way? There appears to be a stick between the jurors.

"*Another Juror.* The point I believe is, would the defendant be responsible for damages that might occur from running logs against the jam, when they knew—for instance, Unger's testimony, after dinner—in running logs down the rollway above, when there was a jam in the river below Bauman's place, and it must necessarily raise the water at Bauman's place,—would they be responsible for damages that might occur on account of adding to that jam, when they didn't have any facilities for removing it?

"*The Court.* I don't know whether I covered that point in my charge or not. What I did say was that the boom

company were required to take the logs along, and not allow them to form in jams,—negligently or carelessly into jams. If they did so, and by that overflowed plaintiff's lands, they would be liable for damages; but when they went there in the spring to take the logs as they found them in the river, they were only required to take ordinary care to keep them moving along, so as to not allow them to jam after starting. It is like this: The logs are in the water, and in large quantities. When the boom company take charge of them in the spring, they are required to start them, and drive them along in the ordinary course, and not allow them to form into jams, and interfere with any rights of any man; and if it allows them to stop and form jams by carelessness and negligence, or by not having a sufficient force to keep them going, they are liable for the damages; otherwise they are not.

"*A Juror.* What we are trying to get at now is, they knew there was a jam below Bauman's, and they cut a channel through the ice to run right down on this other jam, and knew they could not get it below.

"*The Court.* I think I covered that already in my instructions before given. It is hard to get one little transaction with itself, and say whether it is negligent or not. Take all the circumstances together, and say whether the party was guilty or not, under all the circumstances. I would not care to take this one question, and pass upon it as a matter of law. I think you ought to consider yourselves, under all the circumstances, and satisfy yourselves as a matter of fact.

"*A Juror.* The misunderstanding as to whether the boom company, when using all the diligence they could to get the logs out of the river; and this damage they claimed to have been done,—whether they are liable for the whole damage, or a certain part.

"*The Court.* They are just liable for what they did themselves,—the boom company did."

Counsel for defendant contend that the conversation between the court and jurymen shows that an action of the boom company, directly in the line of its duty, was construed by some of the jury into an act of hostility to Bauman, and he ought to have been more explicit, and not leave the jury to grope in the dark for a plain statement of the law, to the defendant's prejudice. The learned counsel do not tell us what instruction the judge should have given. It is evident,

however, that a more specific instruction upon the point inquired after by the jurymen would not have been as favorable to the defendant as the instructions given. The judge charged them that the defendant was only "liable for what they did themselves," which was correct; but, under the facts stated by the jurymen, he should have instructed them that if the defendant, knowing of the existence of the jam at the sand-bar, and its inability to remove it, cut a channel in the ice, or otherwise assisted in bringing down more logs, and adding to the jam, and by that act the water was raised so as to flood or set back on plaintiff's land, it would be liable for the damages caused thereby.

No error appears in the record, and the judgment is affirmed.

The other Justices concurred.