EDSON WITHERAL v. THE MUSKEGON BOOMING COMPANY.

*Logs and logging—Negligence—Injury to reparian owner—Evidence—Land contract—Right of navigation.*

1. Evidence that a booming company had possession of a river in which its men were running logs, which jammed below the land of a riparian owner, and that the company continued running logs against said jam until it extended and filled the river above said land, where it remained for about one month, is sufficient, if unexplained, to make out a *prima facie* case of negligence; and it is not necessary for the plaintiff to negative the exercise by the company of reasonable care and dispatch in its work, or to specify in what respect its employés were negligent.

2. A vendee in possession of land under a paid-up contract, and entitled to a deed, has a sufficient title to enable him to recover for hay and pasturage lost through the negligent flooding of the land by a booming company.

3. Under a clause in a land contract giving to the vendors one-half of the proceeds of the hay raised upon the land until the purchase price is paid, the vendee must account in *money* for the value of the share reserved, but the title to the property and right of possession remain in him.

4. In a suit to recover the value of hay lost through the negligent flooding of plaintiff's land, evidence of the amount cut during

the preceding year is admissible to show the capacity of the land for producing hay.

5. The destruction of plaintiff's pasturage by the negligent flooding of his land is *prima facie* evidence of damage to the amount of its value.

6. A log-owner has the right to use a stream in its *natural* capacity to float his lumber or timber, and is not responsible for any damage incidentally and without his fault arising therefrom. But he has no right to deal with his logs in such a way, by the formation of jams or otherwise, as to cause the water to overflow the adjoining lands more than it would were the logs left to themselves, and allowed to float down naturally and without artificial interference.

7. The Muskegon river has a well-defined channel or bed between well-defined banks or sides; and the low or bottom lands upon the sides of the stream, that are overflowed more or less in times of high water, are not within its boundaries; and the capacity of said stream cannot be increased by artificial means so as to permit the log-owner to use at all times the full volume of water that may flow therein during unusual and brief freshets.

8. The public right of navigation is measured by the capacity of the stream for valuable public use in its *natural* condition, and any attempt to create capacity at other times at the expense of private interests can be justified only on an assessment and payment of compensation.

Error to Muskegon. (Montgomery, J., presiding.) Argued November 10, 1887. Decided January 5, 1888.

Trespass on the case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Keating & Dickerman* (*Edwin F. Uhl*, of counsel), for appellant.

*Gallup & Pearson* (*Smith, Nims, Hoyt & Erwin*, of counsel), for plaintiff.

MORSE, J. In November, 1886, the plaintiff, who resides in Missaukee county, commenced this suit against the defendant, in the circuit court for the county of Muskegon, for damages to his premises and property, situated upon the banks

68 MICH.—4.

of the Muskegon river, in Missaukee county, occasioned, as he claims, by the defendant's wrongful action while in the control and possession of said river, and in the transaction of its business as a booming company.

The claim, as developed upon the trial, was for damages to his hay crop in the years 1881, 1882, 1883, 1885, and 1886, and the loss of pasturage for his cattle during some or all of the years from 1881 to 1886 inclusive.

The declaration averred that this injury and loss were occasioned by reason of said defendant carelessly, improperly, and negligently allowing a jam or jams of logs, timber, and other floatables to accumulate in said stream, below the close and premises of said plaintiff, and so permitting the same to remain for a long space of time; by reason of which jams the river overflowed its banks and flooded the plaintiff's lands, destroying his crops of hay, and washing away the approaches to a bridge he had built across the river, so that he was unable to use his pasture land.

The plaintiff purchased his land in April, 1876, taking a land contract for the same of the firm of Gerrish, Murphy & Co., who were then the owners of it. The farm contains 240 acres, and lies on both sides of the river. When plaintiff went into possession of it, there were 60 acres cleared on the right or west bank. His house was on the left or east bank. What he has cleared since has been mostly high land. His meadows, or bottom lands, were on the west bank, opposite of his house. He had access to these lands by a bridge maintained by him across the river.

He recovered a judgment upon the verdict of a jury in the sum of $500.

The defendant brings error.

After the plaintiff had rested his case, the defendant moved to strike out all the evidence in the case, and that the court direct a verdict for the defendant, for the reason that the plaintiff had not thus far established any negligence upon

the part of the defendant, or shown how or in what manner the defendant had been guilty of negligence, which motion was overruled.

We think there was evidence at the close of plaintiff's case sufficient to warrant its submission to the jury. The plaintiff testified that in the middle of April, 1881, the booming company had possession of the river, and its men were running logs thereon; that the logs jammed below his place, and the company, by its employés, kept running logs down against this jam and filled up the river until the jam extended through his farm and above it, and that the jam laid there from the middle of May until the tenth of June. This was certainly sufficient to call for explanation and excuse, if any could be shown, upon the part of the defendant. Without explanation, it was *prima facie* evidence of negligence.

A mere jam of logs in the river does not, in itself and by itself, constitute negligence upon the part of the booming company running the river; but the existence of such jam for a month or more, and the continued running of logs in such a manner as to increase the jam during such period, does constitute negligence, unless there is a showing that such a state of things could not reasonably be avoided.

It was not necessary for the plaintiff to go further than he did, and show that the company did not use reasonable care and dispatch in its work, or to specify in what respect its employés were careless or negligent.

We do not perceive that the court erred in admitting the plaintiff's proof of title. He had paid up the contract and was entitled to a deed. He went into possession under it at once, and has ever since remained in possession, and his title under the contract and his possession were sufficient to entitle him to recover for the hay and loss of pasturage. *Field v. Log Driving Co.*, 67 Wis. 569 (31 N. W. Rep. 17); *Hungerford v. Redford*, 29 Id. 345; *McNarra v. Railway*

*Co.,* 41 Id. 69; *Carl v. Railroad Co.,* 46 Id. 632 (1 N. W. Rep. 295).

The contract contained the following clause:

"The said parties of the first part [Gerrish, Murphy & Co.] are to have one-half of the proceeds of the hay raised on said premises until the whole amount is paid."

The defendant's counsel claim that one-half of the hay belonged, under this provision, to Gerrish, Murphy & Co. We do not consider that this clause of the contract gave Gerrish, Murphy & Co. any title to the hay. The plain intent of the language is that plaintiff should account to them in money for the value of one-half of the hay, but the hay was to be gathered, sold, or otherwise disposed of as the plaintiff saw fit; the title, property, and possession always remaining and being in him.

The plaintiff was allowed to state, against the objection of defendant's counsel, the amount of hay he cut upon this land in 1880, the year before he claimed any damage to his crop by the company. This evidence was admissible to show the capacity of the land for producing hay. *Booming Co. v. Jarvis,* 30 Mich. 327.

It is argued that the plaintiff was not entitled to compensation for the loss of pasturage, occasioned by the flood or overflow washing away the approaches to his bridge so that he could not get his cattle across the river and upon his pasture lands, because it is not shown that his cattle were not as well fed in the road or somewhere else, or that they were not in as good condition, or that he was put to any expense in herding or feeding them, growing out of the inability to reach his meadow ground.

This argument requires no extended answer. The plaintiff was entitled to the benefit and worth of this pasturage. If it was destroyed by the negligence of the defendant its destruction was, of itself, *prima facie* evidence, to say the least, of damage to the amount of its value.

The circuit judge instructed the jury as follows:

"The right of the plaintiff to farm his land and of the defendant to navigate the stream were concurrent rights, and the defendant was not responsible for any injury to the plaintiff arising from the location of his farm where the stream was subject to the proper use by the defendant of its water for purposes of navigation. And the first duty of the jury in this case is to distinguish between the responsibility and duties of the defendant in the management of the river, and the duties of the others, or the responsibility of others.

"It is admitted, for instance, or at least the evidence is all one way on the question, that the defendant did not itself put the logs in question in this stream in any of those years, and therefore it follows that any injury which was caused to the plaintiff by reason of the fact that such logs were in the stream, and created jams, would not be recoverable in this action against the defendant, nor would the defendant be liable to the plaintiff for any injury caused by running logs down the stream by the defendant, if it did so in a careful, prudent, and diligent manner, having due regard to the rights of the plaintiff and the injury liable to be suffered by him and other riparian owners by the backing up of water caused by jams, etc.

"The plaintiff, to make a case, then, must show that the defendant was guilty of the neglect of duty, and of the failure to use due diligence and care to prevent unnecessary flooding while operating upon the river. What then was the duty of the defendant in the premises, the failure to observe which would render it liable? The duty of the company was to employ a sufficient force of men to break jams as soon as possible when formed by causes not attributable to it, as, for instance, by a roll-way put into the stream by others,—as soon as possible after [the company had assumed control of such roll-way is meant, or had the right to assume control of it,—and to use a sufficient force of men, and to employ due diligence to prevent the formation of jams; and if jams were formed by the company while running logs, which could have been prevented by the exercise of due diligence and caution, and injury resulted to the plaintiff by the backwater caused by such jams, the defendant would be liable.

"So, if a jam already formed by others, as by a roll-way so found in the stream, and the defendant negligently and not of necessity drove logs upon and against such jam, and thereby increased such jam, and the consequent backing of

water, when by the exercise of due care it might have broken such jam before running such logs down to and against it, or if the jury are of the opinion that due care and caution and prudence would have dictated and required the holding back of such logs until such jam was broken, and should find as a fact that the defendant drove such logs down unnecessarily, then the defendant would be liable for such damage as would be caused thereby; and, of course, as the defendant was not responsible for the logs being in the stream, it follows that no liability would arise on this ground unless the defendant was actually running the logs down to and against the jam. If the current of the stream, unassisted, would take the logs down, and the defendant did nothing towards assisting of the running of the logs, no liability would arise.

"You will understand that the converse of these propositions I have stated is true, viz. : If the company employed a sufficient force of men to break the jams within a reasonable time after the same formed, or after they took charge of the same when formed by others, or had the right to take charge of the same, and if the servants of the company used due diligence and care to prevent the formation of jams, and did not contribute by negligently running logs against the jams, or form or increase the backwater on plaintiff's land, there can be no recovery.

"As to when it became the duty of the defendant to take charge of jams formed by others, I instruct you that whenever it becomes necessary to enable the defendant to run its logs without damage to the riparian proprietors,—and by this I mean without damage other than such as would arise from the unobstructed navigation of the stream by the logs,— whenever, I say, it became necessary for the defendant, in order to navigate the stream in this manner, to break jams caused by others, it had the right to take possession of the logs forming such jams and to break the jams. It not only had the right to do so, but before it would be privileged to run logs up and against such jams, thereby increasing the said backing of water upon the plaintiff's land, it would become its duty to do so.

"Unless such necessity arises from the obstruction of its own business in running the logs upon the river, the defendant had no right to assume control or management of logs of third parties which were also floating in the river, unless the parties owning these logs consented to the booming company doing so, and, even where this necessity arises from the obstruction to the booming company, it cannot assume con--

trol and management of the logs of third parties who have not consented to the same being done unless those parties are guilty of negligence in managing their logs floating on the river, or have not made adequate provision for the same; that is to say, unless it becomes necessary, unless they find jams or other obstructions to the proper navigation of the stream, then the company would have no right to take possession of the logs, and certainly would not be accountable to the plaintiff or to other riparian owners for any injury they suffered by logs owned by other parties being in the stream.

"Some evidence has been offered which it is claimed tends to show that on certain occasions the water was let down in large quantities from above by parties operating on the Butterfield, and Houghton lake, causing an increased flooding of plaintiff's land. The defendant cannot be held responsible for this, and is, of course, not liable for any injury which resulted to the plaintiff by reason thereof. Nor is the company liable for any injury caused by ordinary freshets, nor by floods created or caused by roll-ways of third parties situated below the premises of the plaintiff, which created jams, and which caused the water to back upon and flood the premises of the plaintiff.

"To sum up briefly then, what will justify a recovery, the plaintiff must show, or you must find from the whole evidence, either—

"*First*, that the defendant caused the jams in the river which occasioned the overflowing of plaintiff's land, doing him damage; or, *second*, that jams of logs under its charge occurred, which the exercise of due care on its part might have prevented; or, *third*, that the plaintiff suffered because the defendant did not exercise due diligence in breaking such jams as may have been formed; or, *fourth*, that the defendant caused a flood, or an increase of flooding, by running logs against such jams caused by others, in a negligent and unreasonable manner.

"To entitle the plaintiff to recover it must also appear that the flooding of which the plaintiff complains exceeded that which resulted from logs running down the river in a natural state. By this I do not mean to say that, because the logs might have jammed if left uncontrolled, the defendant would not be liable if a jam was negligently permitted to form, and from which the plaintiff suffered while the logs were under the control of the defendant, and being run by the company.

"I think a positive duty devolved upon the defendant, and it cannot be assumed that the owners of the logs would have left them uncontrolled if the defendant had not taken charge of them, and certainly the right of navigation involves no right upon the part of the owners, of those controlling logs, to cast them into the stream and leave them thus uncontrolled.

"The question is whether the plaintiff suffered because of jams which were made by those logs while under the control of the defendant, which logs caused a .larger overflow of water than the proper navigation of the stream by such logs would have caused, and caused the forming of, or increasing to damaging proportions of, such jams, having been formed by the defendant, taking the stream as it found it, with the logs as it found them in the stream, and running the logs in a diligent, careful, and prudent manner. If these questions are determined in the affirmative, the plaintiff is entitled to recover; otherwise, not."

The jury were also instructed that the burden of proof was upon the plaintiff to establish his case, on each fact requisite to make his case, by a fair preponderance of the evidence in the whole case.

Most of the requests asked by defendant's counsel were fairly and substantially covered by this charge; and as a whole no reasonable fault can be found with it.

The court was requested to instruct the jury that the natural channel of the Muskegon river is within the boundaries that the water reaches at high stage; that if the jury found that the lands of the plaintiff were overflowed by floods on the river in the absence of logs, or with logs floating in their natural condition and not controlled by man, at the high stages of the river, which it might reach at one or more times during every year, then the plaintiff could not complain if the floods upon his premises were at no greater height than when the river was at high stage, as the boundaries of the river extend to where they would be when this river was at its high stage, and not when the river was at its low stage; that the boundaries of the Muskegon are not the boundaries

marked by low-water mark on the river, but those defined and marked by the *highest* mark of water flowing through the premises of plaintiff at any time during the year; and that the defendant had the right to use the river to the width of these natural boundaries, when the river stands at its highest water-mark, in the transportation of logs. The refusal of the circuit judge to so instruct the jury is assigned as error.

The doctrine contended for in the language of this request is broad enough to permit the defendant at any time of the year to dam up the river, by jams or otherwise, and flood the plaintiff's land to the full extent of the most extraordinary freshet of the year; and it is gravely argued by defendant's counsel that because the testimony shows that in April, when the snow would go off suddenly, nearly the whole of the 15 acres of the plaintiff's bottom land or meadow would be overflowed for three or four days, therefore the defendant was entitled to so flood it in the running of its logs at any time and all times of the year. There is neither sense nor law in this claim. Such doctrine applied to the navigable streams of this or any other state, would practically destroy the rights of riparian owners to the use and benefit of the best and most valuable lands in the country, and, instead of giving concurrent rights to the land proprietor and the navigator, would make the landed estate servient and subordinate to the rights of navigation.

The chief argument in favor of this proposition we listened to, but cannot tolerate. It was contended that the lumbering interests of this State were so extensive, important, and valuable, and the work of running logs in these streams so necessary to the welfare and prosperity of the business interests of our State, that the policy of the law must impose this servitude and damage upon the small farmer, or this vast source of wealth and profit and livelihood to so many of our citizens be crippled or entirely destroyed. But the theory of

the law cannot be this. The law had its origin in the desire to protect the weak against the strong, and thereby to preserve order. and the public peace; and as the years have advanced and enlightened the law, they have settled, we think, at least in a republican form of government, the right and privilege of the poorest and the weakest man to hold and retain his little own, under the law, equally with the highest and strongest of his fellows. It is better in the present case that there should be, if need be, a little less wealth and profit grow out of the lumbering business, rather than that, in effect, the title deed of one man to his home, or any part of it, should be swept or flooded away from him without recompense.

The law as to the rights of the log-runner has been well stated by this Court on several occasions. The log-owner has the right to use the stream in its natural capacity to float his lumber or timber, and is not responsible for any damage incidentally and without his fault arising therefrom. But he has no right to deal with his logs in such a way, by the formation of jams or otherwise, as to cause the water to overflow the adjcining lands more than it would were the logs left to themselves, and allowed to float down naturally and without artificial interference. *Booming Co. v. Jarvis*, 30 Mich. 308; *Log Co. v. Nelson,* 45 Id. 578 (8 N. W. Rep. 587, 909); *Anderson v. Boom Co.*, 61 Id. 489 (28 N. W. Rep. 518); *Booming Co. v. Speechly,* 31 Id. 344; *Bauman v. Boom Co.,* 66 Id. 544 (33 N. W. Rep. 538).

The Muskegon river has a well-defined channel or bed between well-defined banks or sides. The low or bottom lands upon the sides of the stream, that are overflowed more or less in times of high water, are not within the boundaries of said stream; and it has been heretofore settled in *Booming Co. v. Speechly,* that the capacity of these navigable streams cannot be increased by artificial means, so as to permit the log-owner to use at all times the full volume of water

that may flow in the stream during unusual and brief freshets.

The public right of navigation is—

" Measured by the capacity of the stream for valuable public use in its natural condition, and any attempt to create capacity at other times at the expense of private interest can be justified only on an assessment and payment of compensation."

See, also, *Morgan v. King,* 35 N. Y. 460; *Hubbard v. Bell,* 54 Ill. 110.

Much of the argument of the defendant's counsel here has been devoted to the claim that the evidence taken together upon both sides established the fact that the defendant used all the diligence and care within its power, under the circumstances, to remove these jams and to run the logs without injury to the plaintiff; that the company was not negligent, but that the damage was caused by the joint action of log-owners below and above the land of plaintiff, consisting of the maintaining of jams and roll-ways by those below, and the running down by those above of large quantities of logs from the creeks and other tributaries of the Muskegon against these jams below.

We think there was evidence sufficient to go to the jury upon the question of the defendant's negligence and liability, and with the weight of the testimony we can have no concern.

A careful examination of the charge of the court, as stated in this opinion, will, we think, disclose that the circuit judge clearly advised the jury that the defendant was not liable for the acts of these third parties. The defendant, under the instructions of the court below, was not to be held liable for any damage occasioned before it assumed control of the logs or had the right to do so, and not then if it ran the logs in a careful, diligent, and prudent manner. If the defendant was not running logs down the stream against these jams,

and did nothing in assisting them down, no liability would arise. And if the company used a sufficient number of men to prevent the unnecessary formation of jams, and to break the jams already formed within a reasonable time after it took charge of them, or had the right to take such charge, and did not run logs unnecessarily against these jams, there could be no recovery.

It seems to me, from the evidence in the record and the charge of the court, that the question of the defendant's liability was fairly submitted to the jury, and that no prejudice resulted to it because of a want of care on the part of the circuit judge in pointing out the distinction between the liability of the defendant company for its own negligent acts and its liability for the acts of other parties who were running logs upon the river. I do not think the jury were misled into assessing damages to the defendant which belonged to others to pay.

There was evidence introduced in rebuttal by plaintiff tending to show that the jams formed by others below, and the running of logs by others above, plaintiff's farm, did not cause the injury to plaintiff. As such evidence is not given in full we cannot judge of its weight or truth, if we had the right to do so.

The judgment will be affirmed, with costs.

SHERWOOD, C. J., and CHAMPLIN, J., concurred. CAMPBELL, J., did not sit.