[No. 6187. Decided July 24, 1906.]

W. H. MITCHELL, *Appellant,* v. LEA LUMBER COMPANY, *Respondent.*[1]

LOGS AND LOGGING—INJURY TO SOIL BY DRIVING LOGS—DAMAGES—EVIDENCE—SUFFICIENCY. In an action by a riparian owner against a mill company for damages caused by the driving of shingle bolts down a river, a nonsuit on the ground that a booming company and not the mill company was the guilty party, is erroneous, where it appears that the mill company stockholders had acquired the control of·the boom company, and used it only for the mill company, which paid for all the labor employed in booming, and where the answer of the mill company admitted that the river was used as it had been in pursuance of an agreement between the plaintiff and defendant, which the evidence showed to be a license subject to the payment of plaintiff's damages by the defendant; since the boom company was only the agency through which the mill company acted.

SAME—DAMAGES—EVIDENCE—DEFINITENESS. Damages to the land of a riparian owner by the floatage of shingle bolts is sufficiently definite to support a judgment where there is evidence that, by the driving of bolts and formation of jams, the soil was cut away from 6 to 10 feet along the river for a distance of 800 or 1,000 feet, and the value of the land taken is shown to be at least $50.

SAME—BOOM COMPANIES—NEGLIGENCE IN DRIVING. Damages to riparian owners by the use of a river for the floatage of timber products must be based upon negligence in the operation, and cannot be recovered where the floatage is conducted with reasonable care and prudence (DUNBAR, J., dissenting).

SAME—EVIDENCE OF NEGLIGENCE. Negligence in the floatage of logs is shown where the river was very tortuous, jams were frequently formed, allowed to remain, and not released at the earliest practicable moment.

SAME—REMEDIES—INJUNCTION. The threatened negligent use of a stream for floatage purposes, may be enjoined at the suit of a riparian owner who will be damaged thereby.

Appeal from a judgment of the superior court for Thurston county, Linn, J., entered December 27, 1905, granting a motion for nonsuit in an action for damages resulting to a riparian owner from the driving of shingle bolts in a stream,

[1]Reported in 86 Pac. 405.

and for an injunction to prevent further use of the stream for such purpose. Reversed.

*Vance & Mitchell,* for appellant.

*Troy & Falknor,* for respondent.

HADLEY, J.—This is an action to recover for damages to real estate resulting from the driving of shingle bolts down the Des Chutes river, and to enjoin the further use of the stream for the purpose of floating shingle bolts. It is particularly sought to enjoin the further use of the stream for the purpose of floating shingle bolts in such a manner as to cause erosion of the banks of the stream or the formation of jams whereby timbers or sediment are cast upon the plaintiff's premises, and also to restrain the defendant from trespassing upon the banks of the river along the plaintiff's premises. The plaintiff admits in the complaint that there is ordinarily sufficient water in the river for the purpose of floating shingle bolts, if the river were straightened and improved, but he alleges that the river along his premises has never been improved, straightened or prepared in such a way as to permit the floatage of shingle bolts in such quantities as the defendant has been and is now floating them, and as it will in the future drive them, without material and irreparable damage to plaintiff's premises. The accrued damages are laid in the complaint at $50.

The answer denies the material allegations of the complaint, except that it admits that the stream is floatable for shingle bolts, and it also affirmatively alleges that the river is at all times navigable for such purpose. It is also alleged affirmatively that the river has been occupied and used adjoining the plaintiff's premises, in the manner it has been used, in pursuance of an understanding and agreement had with the plaintiff before the defendant's mill was constructed, and that it has been so used and occupied since said date through and because of said understanding and agreement. The reply admits that, prior to the time the defendant commenced

to float shingle bolts down the river by plaintiff's property, the plaintiff agreed that the river might be used for such purposes along his premises, with the understanding that there should be no damage to his property, and that if such damage occurred the defendant should be responsible therefor. The cause was tried by the court without a jury, and at the conclusion of the testimony submitted by the plaintiff, the defendant moved for a nonsuit, which was granted, and judgment was entered dismissing the action. The plaintiff has appealed.

The respondent insists that the nonsuit should be sustained, on the ground that the evidence did not show that the respondent had been using the river. It is argued that the testimony showed that all the driving of shingle bolts of which appellant complains was done by another corporation known as the Des Chutes River Boom Company, and that it was therefore manifest at the close of appellant's case that he had sued the wrong party. The evidence did disclose the existence of such a corporation as a distinct legal entity under the laws of Washington, and that it was authorized to improve the river and operate upon it as a booming and driving company. It was organized in the year 1901. The annual license fee has since been paid, and the secretary of state has regularly issued the annual license permitting said corporation to carry on its business. The stock of said corporation is now held in the main by the stockholders of the respondent corporation, and was purchased by the latter about the time the respondent corporation began the construction of its mill at Tumwater near the mouth of said river, to receive shingle bolts that should be driven down the stream. The stock of the boom company was manifestly purchased by the stockholders of the respondent corporation in order that they might have control of the boom company for the purpose of driving shingle bolts to respondent's mill. It was testified that the boom company has at all times been ready and willing as a common carrier to drive shingle bolts for others than respond-

ent, but that it has not in. fact driven any for others since
the stockholders of respondent have become the controlling
stockholders of the boom company. Since that time the boom
company has never directly paid any of the men who were
engaged in improving the river or in driving shingle bolts
thereon. All such payments have been made by the checks
of the mill company. The office of the boom company has
been kept continuously in the same rooms with that of the
mill company. From these facts appellant argues that re-
spondent itself employed the men and conducted the opera-
tions along the river. In view of other testimony, it does not
necessarily follow that such was true for all purposes. There
was testimony that the mill company made the payments
direct, but that it charged the advancements to the boom com-
pany and credited the latter company for its driving services.
Such a course of dealing is not inconsistent with the theory
that it was the boom company that operated upon the river.

Appellant, however, did not know of the existence of the
boom company until it was disclosed at the trial of this case.
Respondent contends that he might have ascertained it
through the public records, but in any event he had no actual
knowledge of its existence, and no one representing either
the boom company or the mill company ever informed him
that the boom company was operating upon the river and was
the party responsible for the results thereof. Notwithstand-
ing the fact that the operations upon the river may have been
immediately conducted by the boom company as a corpora-
tion, separate and distinct from respondent, yet we think
under the issues and evidence, the respondent is not in posi-
tion to disclaim liability. In its answer the respondent af-
firmatively avers the following:

"For further and second affirmative defense defendant al-
leges that the said river has been occupied and used adjoin-
ing the plaintiff's premises in the manner which it has, in
the pursuance of an understanding and agreement had with
the plaintiff before defendant's mill was constructed, and has

been so used and occupied since said date, and because and through said understanding and agreement."

The guarded language of the above will be observed. It is not said that the arrangement was made with the respondent and for its occupation of the river, but it is not stated that it was made with another. No reference is made to any third person or corporation. The answer is, however, in response to the charge in the complaint that the respondent itself was using the river and was liable for damages. We know of no rule of construction that will permit any other interpretation than that respondent, by the above allegations, has alleged that it was the one who arranged with appellant for the use and occupation of the river, and that whatever use has since been made of it has been in pursuance thereof. The reply avers that such arrangement was subject to liability for damages, and we think the evidence clearly shows that such was the fact. The arrangement or understanding was the result of a conversation between appellant and the president of the mill company about the time the latter began constructing its mill. The president said he had in mind that the occupation and use of the river would be by the boom company, the stock of which he and others of his company then contemplated purchasing. But he made no such disclosure to appellant, then or thereafter. He must have known that appellant understood that he was dealing with the mill company, and as we have seen, the mill company has alleged in its answer that such was the fact. It is true the evidence shows that the stream is a public highway for floating purposes, within the decisions of this court, and as such it might have been occupied for driving purposes without appellant's consent, so long as careless driving did not damage the latter, and was not accompanied by the use of the banks of the stream upon appellant's premises. Any further occupation or use was a trespass or was by virtue of a license from appellant. Respondent has pleaded such license, but the evidence shows that it was subject to respondent's

liability for damages resulting therefrom. The answer and the evidence having shown that respondent both sought and obtained a license with respect to appellant's premises for the very things which resulted in the damage of which the complaint complains, it is not material that the actual driving may have been done by another corporation than respondent. Such corporation became no more than the agency through which respondent made use of its license, and the latter should not therefore evade its responsibility. We therefore hold that the contention of respondent that appellant has sued the wrong party is not well taken.

It is contended by respondent that no specific amount of damage can be found under the evidence, for the reason that it is indefinite as to the amount and value of the land taken and as to the contributing causes of the injury. There is definite evidence that, by reason of the driving of the shingle bolts and the formation of jams incidental thereto, the soil on appellant's premises has been cut away for a distance from six to ten feet laterally from the river, and that this extends along the lineal course of the stream for a distance of from eight hundred to one thousand feet upon appellant's premises. Under the testimony as to the value of the land, we think damage was shown at least to the extent of $50, the amount alleged in the complaint.

It is next contended in support of the judgment of nonsuit that the evidence does not disclose that the injury resulted from any negligence in driving the shingle bolts. It is argued that no damages can be recovered for injuries which are merely the natural result of the use of the stream as a highway when the operations have been conducted in a reasonably careful manner. The above proposition is sustained by the following authorities cited by respondent: *White River Log & Booming Co. v. Nelson*, 45 Mich. 578, 8 N. W. 587, 909; *Field v. Apple River Log Driving Co.*, 67 Wis. 569, 31 N. W. 17; *Bauman v. Pere Marquette Boom Co.*, 66 Mich. 544, 33 N. W. 538; *Hopkins v. Butte etc. Com-*

*mercial Co.,* 13 Mont. 223, 33 Pac. 817, 40 Am. St. 438; *Davis v. Winslow,* 51 Me. 264, 81 Am. Dec. 573; *Hunter v. Grande Ronde Lum. Co.,* 39 Ore. 448, 65 Pac. 598. Appellant suggests that the above cited cases are from states where the power to condemn property necessary to be used in driving upon a stream had not been previously conferred as it has been conferred upon boom companies in this state. An examination, however, shows that the appellant is in error in this particular, at least so far as some of the states are concerned. The decisions are from states where the timber and lumbering industry is extensively pursued, and they all declare that recovery must be based upon the principle of negligence, and that it does not follow as a matter of right from the mere fact that damage has occurred when there has been no negligence. In *White River Log & Booming Co. v. Nelson, supra,* Judge Cooley said:

"But if the company only makes use of the right of floatage in a proper and reasonable way and without negligence, it is not responsible even though some injury may be suffered by the riparian owner. The rights of the public to run logs in the stream are not subordinate to those of the owner of the bank, but they are concurrent, and each must be enjoyed reasonably and without any unnecessary interference with the enjoyment of the other and without negligence. But this is all that can be required. No man can be punished in damages for an enjoyment of his undoubted rights when he acts reasonably and with prudence."

Appellant contends that a recovery should be had for actual damages without regard to the existence of negligence; but in the light of eminent authority from the great timber states, we think that contention cannot prevail. By those authorities it is held that the timber driver has the right to occupy the stream as a highway for driving purposes, and that, so long as his operations are conducted with reasonable care and prudence, any resulting damage is an incidental burden which the riparian owner must bear. It is true that in this state the constitution requires that property shall

neither be taken nor damaged until compensation has first been paid. But if the damage is of a class for which recovery cannot be had, it becomes *damnum absque injuria,* and the constitutional provision does not apply in such a case. What may be negligence in fact on the part of the timber driver must be determined from all the circumstances. He cannot throw his timber into the stream and allow it to go on its way without the exercise of a reasonable supervising care. The character of the stream, the straight or winding course of its banks, the probability of the formation of jams to the injury of adjoining land, and other attending circumstances must be considered in determining what is reasonable care. What would be reasonable care in one instance might not be in another, and in each instance the manner of operating upon the stream must be carefully scrutinized to the end that the riparian owner may not be damaged by reason of indifference on the part of the timber driver to the rights of the landowner. The former must use such care as is commensurate with the rights of the latter when considered in connection with the reasonable use of the stream as a highway for floatage purposes.

By reason of the somewhat extended discussion of the subject of negligence in the briefs, it has been deemed best to discuss it here, and especially so since it has been suggested that language used in some of our former opinions may lead to the contention that we have heretofore intended to hold that recovery may be had in all instances without regard to negligence on the part of the timber driver. We are not aware that this subject has heretofore been directly raised or discussed before this court in any previously decided case, and as it is directly involved in the discussion of the respective contentions in this case, it has seemed necessary to announce the law upon that subject. In concluding that recovery of damages must necessarily be based upon the principle of negligence, we are in accord with the only authorities that have been brought to our attention involving similar

subject-matter. We do not agree with respondent, however, that no negligence was shown in this case. The river was shown to be very tortuous along appellant's premises, and jams were frequently formed there to the injury of the land. Shingle bolts were cast upon the land and permitted to lie there for months, to the damage of the land. Even if it be true that the original jams were formed from the natural and reasonable floatage and without neglect on the part of the driver, still when they were allowed to so remain and to become greatly increased in proportions by the arrival of other timber, to the damage of adjoining premises, we think proper care was not exercised commensurate with the rights of the abutting owner. Proper care called for the breaking of the jams and the releasing of the timber at the earliest practicable moment. The river is not a place for the purpose of creating and maintaining jams, but it is a highway for the floatage of timber. When jams form as a natural incident to the floatage, they must be released within a reasonable time. Otherwise the river will become blockaded so as to prevent its use as a highway, and damage may result to the abutting land. Inasmuch as negligence was shown by the testimony submitted by appellant, it was error to grant a nonsuit.

The evidence now before us does not show that appellant is entitled to an absolute injunction against the use of the river as prayed in his complaint. The stream is subject to use as a floatage highway within the decisions of this court, and it may be so used without interference from appellant. But he is entitled to recover damages resulting from negligent operations upon the stream. As the record and evidence now stand, he is, however, entitled to an injunction preventing the threatened future use of the banks of the stream upon his premises. Any license he may have heretofore granted for that purpose has been revoked by the bringing of this suit. The judgment is reversed and the cause remanded, with instructions to vacate the judgment and grant a new

trial, and after hearing the whole evidence that shall be submitted by the respective parties, judgment shall be entered agreeably to the conclusions in this opinion upon the legal questions herein discussed. The facts will, of course, be found by the court upon the whole evidence, and the judgment shall be as the facts require, under the application of the rules of law here determined.

MOUNT, C. J., RUDKIN, and CROW, JJ., concur.

ROOT, J., concurs in the result.

DUNBAR, J. (dissenting) — I concur in the result announced by the majority opinion, but dissent from the doctrine announced that the landowner is not entitled to damages when the operations have been conducted in a reasonably careful manner and without negligence on the part of the driver of the logs. While I concede that the opinion is justified by authority, I do not feel bound to follow authority which to my mind is wrong in principle and which works injustice, especially where no question of vested rights is involved, and there never can be any vested right in wrongdoing. Judge Cooley, in the quotation set forth in the majority opinion, says: "But if the company only makes use of the right of floatage in a proper and reasonable way and without negligence, it is not responsible even though some injury may be suffered by the riparian owner." What the learned judge means by the use of the limiting phrase "some injury" is not apparent. Possibly the total destruction of a riparian owner's farm and home, without fault on his part, and wrought in the purely selfish interest and enterprise of another, was so abhorrent to the learned author's natural sense of justice that he shrank from its contemplation and sought to minimize the injury which could be inflicted by limiting the announcement to "some injury," which implies "not a great deal." But once the principle of non-responsibility is established, the amount of injury cannot logically be taken into consideration. That becomes simply a question of de-

gree. It is also doubtless true, as is further stated by Judge
Cooley, that the rights of the public to run logs in the stream
are not subordinate to those of the owner of the bank, but
are concurrent. But under the rule laid down, the rights
of the owner of the bank may become subordinate to the
rights of those using the river, for serious damage to and
absolute destruction of the landowner's property might be
the final result of driving logs down a river, by a constant
and continued erosion of the banks and through other causes
which are conceivable, even though the work were prosecuted
without negligence on the part of the driver.

The trouble is that the distinguished author, in laying down
the rule of concurrent rights, neglected to apply another basic
principle of law, which is as old as the law itself and founded
on manifest justice, viz., that one person has no right to so
use his property as to damage his neighbor; and another rule,
equally just, that where one of two innocent persons must
suffer, the party who for his own benefit puts in operation
the destructive agency which is the cause of the damage must
suffer the consequences of such acts, rather than he who is
innocent of both motive and action and who, in no event,
could benefit by the enterprise. In the second place, as a
practical question, it would be very difficult, and in most
cases absolutely impossible, for the owner of the land to prove
that the operation of the business was not in the ordinary
manner. He is not familiar with the *modus operandi* of
driving logs, knows nothing of the orders that are given to
the men, or of the precautions that are taken or neglected.
Surely the burden ought not to be placed upon the landowner
to watch his banks day and night when they are confessedly
being injured for the benefit of another, to obtain the proof
necessary to show that the driving was not made in a reason-
able and careful manner. It is certainly cold comfort to a
person who sees his farm gradually vanishing to be informed
by the courts to whom he applies for redress that, notwith-
standing the conceded fact that a corporation for its own

exclusive benefit is destroying his farm, he has no remedy, if the destruction is wrought by conducting the business in hand in a reasonably careful manner. It is to be regretted, in my judgment, that such a principle is to be engrafted upon the adjudicated laws of this state.