RUFUS DWINEL *versus* SAMUEL VEAZIE.

The owner of a mill privilege has no right to raise a head of water so high as to injure the operations of an older mill above his dam, or to obstruct the public use of the river, as a stream navigable for boats, rafts and lumber.

Every mill owner has a right to the use of the water above and below his mill, so far as such use is reasonable and conformable to the usages and wants of the community.

Where one turns the waters of a navigable river from its accustomed bed, the public have a right to use it in its new chanel, and if the new channel becomes obstructed, they have a right to effect a suitable passage over the former channel, causing no unnecessary damage thereby.

Dwinel *v.* Veazie.

This is an ACTION OF THE CASE upon the following declaration, and comes before the full court upon EXCEPTIONS to the rulings of CUTTING, J., and on MOTION for a new trial.

The exceptions only are considered by the court.

In a plea of the case for that the plaintiff is, and at the time hereinafter complained of, was seized in fee simple and in possession of certain real estate in Oldtown, in said county, consisting of a water power and privilege for mills, with appurtenances, at a place called Lower Oldtown, on Penobscot river, a public way in said county—said Dwinel having at said place a dam, upon which are at this time four up and down saw mills, two clapboard mills, and two shingle mills and machines, with lathe mills and other erections, said mills being known as the Dwinel Block—and being mills next below mills at Oldtown Falls, known as the Veazie mills, belonging to the said defendant. That besides said mills, privileges and appurtenances, the said Dwinel has certain dams and erections and the right of maintaining the same between said Dwinel mills and said Veazie mills, on said river—and also the mill pond and head of water—booming grounds and running ground for logs—the shores, with all the improvements and privileges, and easements, which have been for years used and enjoyed by the said Dwinel mills, and lying between the two places aforesaid;

And that the main and westerly channel of said Penobscot river, between said two blocks of mills, has, before the act complained of herein, flowed near the westerly bank of said river, and would have flowed and belonged there had there not been an illegal and improper diversion.

But the said Veazie, at said Oldtown, in June last, removed certain bottom and materials below his said mills, from the bed of said river and westerly channel, so that said channel and river between said points has been nearly or entirely diverted, and a new bed or way was thereby created for said river, carrying the water from said Dwinel's mills and not returning the same; whereby said Dwinel's property, of great value, has become depreciated and of little or no val-

ue, and whereby he has been at great expense and labor at attempts to repair the same; and has been greatly damaged in his business and logs and lumber, for the time since the acts complained of were done, and suffered much other injury and wrong on account thereof.

Also for that said Dwinel, having been for years possessed of said rights and estate as aforesaid, and said Veazie having owned for many years as aforesaid, the said Veazie for a series of years prior hereto, up to the date of this writ, at said Oldtown, has filled up and obstructed the said channel and mill pond with slabs and edgings, and other waste stuff of lumber, so that the channel of said river between said two points has been choked and finally diverted, and said Dwinel's mill pond has been filled up, whereby he has been put to great annoyance and expense in driving and booming his logs and managing his lumber and operating his mills, and been otherwise much annoyed and injured, and been deprived of a reasonable use of his privileges as aforesaid.

Also for that said plaintiff and said defendant, being possessed as aforesaid, and situated as described in the counts aforesaid, the said Veazie has, in the use of his said property, been unmindful of the rights of said Dwinel below, and said Veazie was aware fully that any waste stuff of lumber thrown from his said mills into said stream would not pass below said Dwinel's mills, but would stop in his mill pond and above, and become in time sunken and obstruct said channel and the passage for said Dwinel's logs and lumber; still, regardless of the consequences for the last six or ten years past, he has thrown and sluiced and allowed and directed and assisted to be thrown and sluiced from his said mills, said slabs and waste lumber, until said Dwinel's mills, privileges and property aforesaid, have been nearly or quite destroyed, and the damage as aforesaid and much other injury has ensued to him.

Also for that said Veazie, at said Oldtown, in June last, with force and arms, tore away a side dam of said plaintiff's, making a breach therein, and turned the water of said Dwi-

nel's pond through said breach, and diverted said Penobscot river from its natural channel and from its course, as enjoyed by said Dwinel and those under whom he claims, for the last fifty years.

The defendant's counsel contended that the natural channel from the defendant's mills for rafts and drift, being down the channel across which the plaintiff had erected his mills and dam, the defendant had a right at all times to the use of it in its natural state, for purposes of running rafts and waste from his mills, or to some other channel or outlet equally beneficial; that this right could not be barred by an adverse use of twenty or even fifty years; that if the plaintiff would stop up this channel by affording another in its stead, and this latter did not vent or give passage to such rafts and drift equal to the natural channel, the plaintiff could not complain of any injury which he might suffer for any such deficiency, nor recover damages therefor.

That the plaintiff having erected the side dam for the accommodation of his mills, with a sluice through it, and this having remained there for more than twenty years, the plaintiff was bound to keep said dam and sluice in good repair and safe and convenient for the navigation from Veazie's mills; and that if the same became unsafe or impracticable to navigate as aforesaid, the defendant was justified in making a reasonably good passage through another practicable part of the dam, wherever it might be reasonably done, and especially through the breach which had been made by the freshet.

That for this purpose, as owner of the soil under the water where this reef of edgings was, he was fully justified and had a right to remove the edgings to a reasonable extent, the same having been placed there wrongfully by the plaintiff's agency on the defendant's land.

That if by reason of increasing the height of his dam at the mills, or by the erection of the piers and booms as aforesaid, the plaintiff had been instrumental in causing the drift to float into and settle in the plaintiff's mill-pond, which

would otherwise have gone by down the stream, the plaintiff could not recover for any injury resulting therefrom.

That the defendant's predecessor in title, having erected his mill prior to the erection of the plaintiff's mills and dam, the latter was subject to the prior right which the defendant had to float his drift down the plaintiff's channel from his mill, by the natural channel or another equally as beneficial, he exercising a reasonable caution in doing so, and not putting in any such as he had reason to suppose would sink or cause an obstruction.

And any injury occasioned by his not furnishing such channel, upon closing the natural channel, cannot give the plaintiff a right to damages.

The court instructed the jury:

1. That the prior erection of the defendant's mills on his privilege gave him no superior rights over the plaintiff, but that the plaintiff's rights were the same in all respects as though no mills had been previously erected above on the stream, so *far as this case is concerned*—that no priority of occupation for less than twenty years gave any such prior or higher right.

2. That twenty years' peaceable possession and enjoyment gave the plaintiff a right to maintain his dam to the extent he had so used the same, for the purposes of raising a head for his mills, and navigating his logs—-that he would have no title to the basin for other purposes. That he would have no right to obstruct the navigation of the river, but must give a suitable and convenient passage for logs, lumber, and whatever could be floated there in its natural state. That all property of this kind is incidentally liable to much injury by saw dust and drift stuff, as mills are ordinarily used, and must be subject to all such, if ordinary care would not prevent it. That if the defendant had permitted, through the want of ordinary care, waste stuff to be thrown into the stream to the plaintiff's injury, by sinking in his mill-pond, he would be liable for all which ordinary care and prudence would have prevented; notwithstanding that in the natural

state of the stream, without the erections made by the plaintiff, such drift might have gone down and not settled in the stream.

3. That if the erection of the piers and booms in the basin in front of the defendant's land by the plaintiff or his predecessors in title, had contributed to the injury complained of, by directing drift from the defendant's mills into the plaintiff's mill-pond, which would not otherwise have gone there, then the plaintiff could not recover unless the defendant had consented to such erection.

4. That the dam at the plaintiff's mills, having existed for more than twenty years, with a waste way over it for the passage of drift or waste stuff, the defendant had a right to have it so remain and the plaintiff had no right to stop the waste way up; but the defendant could not claim to have it kept open except for such a number of mills as he had when the prescriptive right was perfected, and that he had no claim to have the waste way kept open to discharge any of the drift stuff or waste from any new mills subsequently erected.

5. That the plaintiff was bound to keep the side dam and sluice through it in good repair, and safe and convenient for the use of those who would navigate the water from Veazie's mills—and that he committed a wrong if he permitted it to remain out of repair and unsafe. But if it were so out of repair and in an unsafe condition, and inconvenient, even for an unreasonable time, yet this did not justify the defendant in cutting through the reef of drift for the purpose of making a channel through the breach in the dam, whereby rafts might be floated from the mill to the main river, if thereby the water was diverted from its natural or accustomed flow to the plaintiff's mills, but it was the defendant's duty to repair the breach, and then seek his remedy against the plaintiff, instead of making the cut.

6. And the fact that the cut made by the defendant for that purpose was through a reef formed by edgings and drift on the defendant's own land, did not give him a right to

make it, though it was erected there by the plaintiff on the defendant's land, if it caused such a diversion.

7. That if the defendant leased the mills during the time covered by the plaintiff's writ, and the lessees had committed the injury complained of, the defendant would not be liable, unless it was in his power to control and prevent them by use of common care and prudence—but if he could so control and prevent them by such care and prudence, and did not, then he would be liable for all the injury by such neglect.

8. That the measure of damages for such diversion of water would embrace a reasonable rent of the plaintiff's mills for such a length of time as it would reasonably take to repair the breach in the dam, so as to restore the water to its former channel.

Other instructions were given which are not excepted to.

The jury returned a verdict for the plaintiff for $6000.

To the several rulings and refusals aforesaid, the defendant excepts and prays that his exceptions may be allowed.

*J. A. Peters,* counsel for the plaintiff.

*A. W. Paine* and *G. W. Ingersoll,* counsel for the defendant.

HATHAWAY, J.  Penobscot river is navigable for boats, rafts, and lumber, above and below Oldtown Falls.  In the river are sundry islands, which so divide the waters as to make an east and a west channel.  Goat island is near to, and next below the falls, and Webster's island next below that.

The defendant owned a mill privilege at those falls, on the west channel of the river, and he and those from whom he derived his title, have owned and occupied it as *such,* ever since 1801.

The plaintiff owned a mill privilege on the same channel, about half a mile below the defendant's mills, which privilege has been owned and occupied by the plaintiff and those from whom he derived his title since 1803.  When the dam was built on the plaintiff's privilege, in 1803, no sluice or passage

way was made through it for running rafts, but instead thereof, the owner of it built a side dam from Webster's island to Goat island, and made a sluice through it, near its lower end, which dam and sluice were ever after kept in repair by the owners of the plaintiff's mill site, until 1854, and the sluice was always used by the owners and occupants of the mills on the defendant's privilege, for running rafts of lumber from their mills into the eastern channel of the river, where they could be floated to market.

"A *bank* of drift stuff, slabs, &c., accumulated in the river, between the plaintiff's and the defendant's mills, which bank extended down the stream from the western side of Goat island, narrowing the channel, and leaving a large basin on the east side of the bank, between said bank and the side dam, around the lower end of which bank was the channel or passage for rafts to the sluice.

In the spring of 1854 a breach was made in the side dam, and a part thereof, near the upper end of it, carried away, by reason of which the floating of rafts through the sluice became impracticable or dangerous.   The plaintiff had due notice of the breach in the side dam, but did not repair it. Whereupon the defendant made a cut through the "bank of drift stuff, edgings, and slabs," through which rafts could be run from his mills, and thence through the breach in the side dam, to the eastern channel of the river.

The cut made by the defendant through the "bank of drift stuff," &c., diverted the water, or a considerable portion of it, from the plaintiff's mills, to his damage, for which this action was brought, and also for filling up and obstructing the channel of the river and the plaintiff's mill-pond.   The case is presented on exceptions, and a motion for a new trial.

The defendant contends "that no action can be maintained for any damages sustained by the plaintiff from the filling up of his mill-pond by edgings and drift stuff, even though the facts be as alleged by him," for, "that the wrong done, if one, is of a public and general nature."

The allegation in the second count in the writ, is, that the

defendant had "filled up and obstructed the said channel and mill-pond with slabs and edgings, &c., so that the channel of said river has been choked and finally diverted, and the said Dwinel's mill-pond has been filled up." We cannot doubt that this is a sufficient allegation of special injury to maintain an action, according to the authority of *Stetson* v. *Faxon*, 19 Pick. R., 147, and other cases cited in argument by the defendant's counsel.

When the defendant's mill privilege was first occupied, as *such*, in 1801, the owner thereof had a right to the use of the water for his mills, subject to the rights of the public to the use of the river as a stream navigable for boats, rafts and lumber, and when the plaintiff's mill privilege was first occupied, as such, in 1803, the rights of the owner thereof, and his duties to furnish facilities of passage to the public at his mill-dam, were the same as those of the owner of the upper privilege, neither of them having the right, by his dam, to raise a head of water so high as to injure the operations of an older mill above his mill-site. The defendant had a right to the use of the water above his mills, to float logs to them, and also to the use of the water below them, to float rafts and lumber to market, and also to float away the waste stuff from his mills, so far as such use was reasonable and conformable to the usages and wants of the community.

His right of way was in the waters, and the plaintiff had no authority to prevent its use. The owner of the plaintiff's privilege had a legal right to erect and continue his dam and mills, but he was bound to provide a way of passage for the defendant's rafts. *Brown* v. *Chadbourne*, 31 Maine R., 9.

The plaintiff proved by Ebenezer Webster that there was no channel between the two islands when the side dam was built between them, and that rafts could run out between them *only* when the water was high.

The original erection of the dam, on the plaintiff's privilege obstructed the flowing of the waters, so that they could not be used *there* as formerly, for floating rafts. The effect of the plaintiff's mill-dam, the side dam, and the sluice, was

to raise the waters to be used for floating rafts from the defendant's mills, and turn them into a new channel between Goat island and Webster's island.

It was held by the court in *Dwinel* v. *Barnard*, 28 Maine R., 554, that "should a person obstruct the flow of the waters of a river or stream over their accustomed bed, so that they could not be used as formerly for the purposes of boating or of floating rafts or logs, and should turn them into a new channel, he would thereby authorize the public to use them in the new channel, as they had been accustomed to use them in their former channel."

The owners and occupants of the mills on the defendant's privilege had used the new channel between those islands over fifty years, running their rafts through the sluice until they could not safely use it longer, by reason of the breach in the side dam above the sluice.

The defendant had a right to use the water for floating his rafts. The channel had been obstructed by the plaintiff's mill-dam, and the waters to be used for floating rafts, had been turned into a new channel, which was in such a condition that it could not be safely used without expensive repairs, which it was the plaintiff's duty to make, or to provide some suitable passage way, which he neglected to do, after notice. The defendant had all the rights of passage for his rafts through the side dam which he would have had through the mill-dam, if the side dam and sluice had never been made, and he had a lawful right, in the use of reasonable care, and causing no unnecessary damage to the plaintiff, to effect a suitable passage for his rafts. And whether in doing it he used such care, or caused any unnecessary damage to the plaintiff, is a question of fact, which should have been submitted to the jury.

The defendant would not be liable for the tortious acts of his lessees, unless authorized by him. *Rich* v. *Barterfield*, 56 Eng. Com. Law R., 783; *Regina* v. *Watson*, 2 Ld. Raymond, 856; *Earle* v. *Hall*, 2 Met. R., 353; *Hilliard* v. *Richardson*, 3 Gray's R., 349; *Wyman* v. *Farrar*, 35 Maine R.,

64. And the case furnishes no evidence that they were authorized by him to do any unlawful act to the plaintiff's property. So far as the instructions given to the jury, are conflicting with our views of the law upon the questions presented in the case, and considered by the court, we think they were erroneous. The exceptions are sustained. The verdict is set aside, and a new trial granted.

It is not necessary to consider the other questions presented on the motion.