**WILLIAM K. LANCEY** *versus* **JOHN B. CLIFFORD** *& al.*

The common law allows the owner of the soil over which a floatable but innavigable stream flows, to build a dam across it and erect a mill thereon, provided he constructs a convenient and suitable passage-way for the public, by or through his dam.

In case, for delaying plaintiff's timber in consequence of such a dam built on defendants' land, across such a stream, proof that the place was suitable for a mill-site, had been used as such for many years, that the dam was built for the purpose of raising water for working water mills, and that, when the dam was built, a suitable sluiceway was constructed in a suitable place, and kept in proper condition, during the time embraced in the plaintiff's declaration, will constitute a valid defence.

It is not necessary that the erection of the mill precede the construction of the dam; but, if the latter was built at a suitable place and for .the purpose of raising the water to propel a mill to be subsequently erected there, it is sufficient.

ON REPORT.

CASE, for building a dam across the Sebasticook river, in the town of Benton, whereby the plaintiff alleged he was prevented from floating his logs to market. When the plaintiff's evidence was all in, the defendants offered to prove each of the following propositions : —

That they, in connection with one Asher Hinds were, at the time of the erection of said dam, and during all the time embraced in the plaintiff's declaration, the lawful owners of the land where said dam was erected.

That the stream upon and across which it was erected and maintained was not navigable for vessels or boats of any description.

That said dam was erected for the purpose of raising water for working water-mills ; and that the erection of said water-mills was delayed, by reason of portions of the dam having been carried away by freshets.

That the place was suitable for the erection of water-mills and a dam ; and had been used and occupied as such for more than fifty years prior to 1840.

That a sluice suitable for running logs, rafts and other

lumber through and by said dam, was by them constructed at the time the dam was erected, and in a suitable place, and kept in proper condition by them during the time embraced in the plaintiff's declaration,

And they also offered to prove the direct effects of the dam upon the stream above, for two miles, in improving the stream and increasing the facilities for running and driving logs and other lumber.

The presiding Judge ruled that neither nor all of these facts offered to be proved, if proved as proposed, would be a defence to the action. .

Thereupon a default was entered, with an agreement that, if the ruling was right, the default to stand, and damages to be assessed, as by agreement; otherwise, the default to be stricken off and a new trial granted.

*A. Libbey*, for the plaintiff.

1. Defendants not protected by the mill Act, R. S. of 1841, c. 126, § 1. Defendants erected no mill, and have never used the dam for the purpose of raising water to work a mill. One cannot thus erect and maintain a dam for a series of years. He must have his mill and then he may maintain a dam to raise water sufficient to work it. A complaint for flowage would not lie against him. *Purrington* v. *Blish*, 14 Maine, 423.

2. The proof offered by defendants is not sufficient to constitute a defence. If all set out in a plea in bar it would not be good. " All hindrances or obstructions to *navigation*, without direct authority of the Legislature, are public nuisances." " The same principle must apply when the river is not navigable in the strict sense in which the word is used in the common law. A dam which *impedes* the rights of the public in floating logs in a stream in which they can be floated in its natural state, must, for the same reasons, be held *pro tanto* a nuisance." *Knox* v. *Chaloner*, 42 Maine, 156 ; *Veazie* v. *Dwinel*, 50 Maine, 486. No proof in this case that the dam with the sluice did not *impede* the rights of

the public, or did not unreasonably obstruct such use. It might have originally been constructed in such manner, but, after portions were carried away, as defendants' offers assert, there may have been no water running over sluice. All that the defendants offer may be true, and still the action stand.

*J. S. Abbott*, for the defendants.

DICKERSON, J. — Case, for erecting a dam across the Sebasticook river, in the town of Benton, whereby the plaintiff was prevented from using the same, as a highway, for floating his logs.

After the plaintiff had closed his testimony, the defendants offered to prove certain propositions, but the presiding Judge ruled that the evidence offered would not constitute a defence to the action; and thereupon a default was entered, and the defendants excepted. The exceptions raise the single question of law, whether the evidence offered would be a valid defence to the action.

A stream which, in its natural condition, is capable of being used for floating logs, lumber and rafts, is subject to the public use, as a highway, though it be private property, and not strictly navigable. This right of the public, however, must be exercised in a reasonable manner, since each person has an equal right with every other person to its enjoyment, and the enjoyment of it by one, necessarily, to a certain extent, interferes with its exercise by another. What constitutes reasonable use by the public depends upon the circumstances of each particular case, as the occasions for the use are so numerous and diverse that no positive rule can be laid down to regulate it, in every instance, with anything like entire precision. The various purposes for which such a highway is used by the public, whether for transporting merchandize, rafting, driving or booming logs, or securing them at the mill, afterwards, if necessary, require so much space as temporarily to obstruct the way; but, if

parties so conduct themselves in this business as to discommode others as little as is reasonably practicable, the law holds them harmless. If the rule of law was otherwise, the right of way, in many cases, could not be made available for any useful purpose. *Brown* v. *Chadbourn*, 31 Maine, 9 ; *Davis* v. *Winslow*, 51 Maine, 264.

As respects the rights of the land owner to streams, it is to be observed that, while he has a property in the *stream*, he has no property in the *water* itself, aside from that which is necessary for the gratification of his natural or ordinary wants. All the rest of the water is *publici juris; aqua currret et debet currere ut currere solebat*. The right of enjoying this flow without disturbance, interference or material diminution by any other proprietor, is a natural right, and is an incident of property in the land, like the right the proprietor has to enjoy the soil itself, without molestation from his neighbors. The right of property is in the right to use the flow, and not in the specific water. Each proprietor may make any use of the water flowing over his premises which does not essentially or materially diminish the quantity, corrupt the quality, or detain it so as to deprive other proprietors, or the public, of a fair and reasonable participation in its benefits. *Race* v. *Word*, 30 E. C. L. & Eq., 187 ; *Johnson* v. *Jordon*, 2 Met., 234 ; *Dickinson* v. *Grand Junction Canal Co.*, 7 Exch., 282 ; *Tyler* v: *Wilkinson*, 4 Mason, 397.

This rule does not require that there shall be no diminution, abstraction, or detention whatever, by the upper or lower riparian proprietor, as that would be to prevent all reasonable use of it. The same principle in regard to use, by the riparian proprietors, applies, as in the public use of the stream as a highway ; it must be a reasonable use, and not inconsistent with the reasonable enjoyment of the stream by others who have an equal right to its use. Reasonable use is the touchstone for determining the rights of the respective parties.

Thus, in considering this subject, we find the public right

of way over the stream, and the land owner's right of soil under it, and his right to use its flow. The rights of both these parties are necessary for the purposes of commerce, agriculture, and manufactures. The products of the forest would be of little value if the riparian proprietors have no right to raise the water by dams and erect mills for the manufacture of these products into lumber. The right to use the water of such streams for milling purposes, is as necessary as the right of transportation. Indeed, it is this consideration that oftentimes imparts the chief value to the estate of the riparian proprietors, and without which it would have no value whatever in many instances. Each right is the handmaid of civilization; and neither can be exercised without, in some degree, impairing the other. This conflict of rights, therefore, must be reconciled.

The common law, in its wonderful adaptation to the vicissitudes of human affairs, and to promote the comfort and convenience of men, as unfolded in the progress of society, furnishes a solution of this difficulty, by allowing the owner of the soil over which a *floatable* stream, which is not technically navigable, passes, to build a dam across it, and erect a mill thereon, *provided* he furnishes a convenient and suitable sluice or passage-way for the public, by or through his erections. In this way both these rights may be exercised without substantial prejudice or inconvenience.

In *Brown* v. *Chadbourn*, before cited, which was an action on the case, to recover damages and expenses in getting the plaintiff's logs by the defendant's dam, the Court say, — "the defendant could, by law, erect and continue his dam and mills, but was bound to provide a way of passage for the plaintiff's logs." So, in *Knox* v. *Chaloner*, 42 Maine, 157, the Court affirm the same principle, and hold that "the right of passage remains in the public, for which the mill owner must make suitable provision at his peril." Again, in *Veazie* v. *Dwinel*, 50 Maine, 487, RICE, J., observes, and the Court held that, "while the mill proprietor may erect and maintain his dam, he must, at the same time, keep

Lancey *v.* Clifford.

open, for the use of the public, a convenient and suitable passage-way through or by his dam."

Upon the principles of these authorities, the evidence offered by the defendants, that the Sebasticook river was not navigable, that they owned the land where the dam was built, that the place was suitable for a mill site, and had been used as such for many years, and that "the dam was erected for the purpose of raising water for working water mills," would clearly establish their right to erect and maintain their dam and mills, provided they furnished a suitable passage-way around them.

We think that this condition was complied with in the offer of the defendants to prove that "a sluiceway suitable for running logs, rafts and other lumber, was by them constructed at the time the dam was erected, and in a suitable place, and kept in proper condition by them during the time embraced in the plaintiff's declaration." If such a state of facts existed, there was no nuisance; the plaintiff was protected in the reasonable exercise of his right of way, and the defendants exercised their right to. build the dam, in a reasonable manner. The suitableness of the dam negatives the idea of a nuisance. If the sluiceway was a suitable one, it did not, in legal contemplation, constitute an unreasonable obstruction to the enjoyment of the plaintiff's easement. It was not necessary that the erection of the mill should precede the construction of the dam; the latter properly preceded the former. It was sufficient if the dam was built at a place suitable for a mill site, and for the purpose of raising the water to propel a mill to be subsequently erected thereon.

We think that the evidence offered by the defendants constitutes a valid defence to the action, and that the exceptions must be sustained, the default stricken off, and the case must stand for trial.

APPLETON, C. J., WALTON, BARROWS and TAPLEY, JJ., concurred.

KENT, J., did not sit.