COLLINS & a. v. HOWARD & a.

A public easement for floating logs exists in a stream which is capable of being generally and commonly used for that purpose; and a riparian owner cannot acquire by prescriptive use a right which will defeat or destroy the rights of the public in such a stream.

PETITION, for an injunction to restrain the defendants from floating logs down the river called the North Branch, which flows through Grantham, Croydon, a part of Newport, and unites with Sugar river at North Newport.

The stream is small, and has, for a part of the way, a heavy fall and a very rocky bed. No logs were ever floated down past the plaintiffs' premises until the spring of 1888. The defendants concede that logs cannot be run down the stream except in high water, which lasts from three to five weeks in the spring, and sometimes for a week or so in the fall.

Collins owns a dam and shingle-mill about half a mile above Grantham village, Dunbar a grist- and saw-mill at the village, and Stockwell a mill for the manufacture from wood of various articles, and a cider-mill, located about seven miles below the village. These dams and mills have existed substantially in their present condition for more than fifty years. The dam and mill of the pulp company, situated about a mile and a half above Stockwell's, were recently built.

The defendants own sixty-three acres of timber land, situated about two miles above Grantham village, on both sides of the river. They have cut, and now have on the river bank, about four hundred thousand feet of spruce and hemlock logs, which they propose to drive down to North Newport the coming spring. The entire distance is about ten miles. The defendants have on their land half a million or so of uncut timber. There are over one thousand acres of heavily timbered lands owned by various parties, so situated that the timber would naturally be floated down the stream from the same point, or a point above, if it can be. From other lands in the vicinity, and similarly situated in respect to the stream, timber has been cut in considerable quantities during the past thirty years, and hauled to market by teams. The cost of

floating the defendants' logs to North Newport would be about seventy-five cents a thousand, and the cost of drawing them by teams about $4 a thousand.

As an experiment, and for the purpose of determining whether floating timber down the river is practicable, the defendants, in the spring of 1888, cut and floated down thirty thousand feet or more of spruce logs. These in going over Collins's and Dunbar's dams injured slightly the foundation walls of their mills. By the use of a boom to turn the logs away from the mills toward the opposite bank of the stream, like damage in the future may be prevented. The defendants were unable to begin the drive as soon as they desired, and owing to this circumstance, to the settling of Cooper's bridge whereby the logs were stopped at that point for a week or ten days, and to various other accidents, did not succeed in driving the logs quite down to the pulp-mill. A few of the spruce logs now lying on the river bank are larger than any of those driven down last year, and the hemlock (though cut and peeled in June) is somewhat heavier than spruce. The defendants during the past season have considerably improved the stream by blasting out the larger rocks.

The plaintiffs contend (1) that inasmuch as until 1888 the river never was used for the purpose, it is not a highway for floating timber, and that the defendants have as matter of law no right to use it for that purpose; and (2) that (if they have such right) Collins, Dunbar, and Stockwell have acquired a prescriptive right to maintain their dams and mills in their present condition, and cannot be required to make or to permit to be made any alteration therein, however slight, inexpensive, and reasonable it may be, for the purpose of facilitating or making practicable the floating of logs over their dams and by their mills. The court ruled against both propositions, and that the defendants are entitled to float their lumber down the river, if the use of the stream for that purpose is a reasonable use. To these rulings the plaintiffs excepted.

*Wait & Chellis* and *S. L. Bowers*, for the plaintiffs.

*I. Colby* and *H. W. Parker*, for the defendants.

SMITH, J. A public easement for floating logs exists in a stream which is capable of being so used. The easement is not founded upon usage, custom, or prescription, nor is it derived from previous enjoyment, but it depends upon the capacity of the stream for trade or business. It exists when the stream is capable of being generally and commonly used for the purposes of commerce, for the floating of vessels, boats, rafts, or logs. *Carter* v. *Thurston*, 58 N. H. 104; *Thompson* v. *Androscoggin River Improvement Co.*, 54 N. H. 545; *Brown* v. *Chadbourne*, 31 Me. 9; Ang. Wat., ss. 535–541.

A riparian owner cannot acquire a prescriptive right against the public to impede or in any way injure navigation or any other public easement in any of the matters of the state.    G. L., *c.* 135, s. 9 ; *State* v. *Franklin Falls Co.*, 49 N. H. 240.

The general doctrine in reference to the use of public streams as public highways is, that each person has an equal right to their reasonable use.    But what constitutes reasonable use depends upon the circumstances of each particular case.    If, upon evidence already introduced and to be introduced on a further hearing, the fact shall be established that this stream is capable of being used for floating logs, the plaintiffs' right to maintain their dams and mills must be enjoyed with reference to the right of the defendants to float their logs down the stream.

*Exceptions overruled.*

CARPENTER, J., did not sit: the others concurred.