WILLIS R. BOUTWELL AND MARY E. BOUTWELL *v.* CHAMPLAIN REALTY COMPANY AND AMERICAN REALTY COMPANY.

October Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed May 15, 1915.

*Navigable Waters—Injuries to Riparian Owners by Using the Waters as a Highway—Judicial Notice—Rivers—"Boatable Stream"—Authority of Legislature Over Navigable Waters —Construction of Statutes—Presumption Favoring Validity —Floating Logs—Care Required—Injury to Riparian Lands —Liability—Damnum Absque Injuria—Equity—Adequate Remedy at Law—Averment of The Contrary—Effect on Demurrer.*

Because the language used in equity pleadings is to be given its ordinary meaning, and in equipoise the construction is to be against the pleader, no intendments being made in his favor which do not naturally result from the facts alleged, averments in a bill in equity that plaintiffs' lands are bounded on the west by lands of named persons; that "White River flows in a southerly direction along the westerly portion" of plaintiffs' lands, and that portions of plaintiffs' lands were damaged by logs floated in that river, are insufficient to show that plaintiffs own any of the bed of that river.

The courts of this State take judicial notice that the Connecticut River is a public highway upon which in early times property was transported in boats and otherwise, and that in more recent times it has been used as a great public highway for the floating of logs.

The courts of this State will take judicial notice that White River is one of the larger rivers of the State and is non-tidal, but the question whether it is a "boatable stream" is one of fact.

Boatable waters, within the meaning of the Constitution, are waters that are *capable* of use by the public for purposes of transportation and commerce.

Waters above the flow of the tide are, *prima facie*, private in use as well as in ownership, and the burden of showing that a particular stream is boatable is on the person seeking to use it as such.

The Legislature cannot make an unnavigable stream a navigable one by declaring it to be so.

The Legislature may provide for the development of a navigable stream emptying into one of the great rivers, if Congress has not acted in that matter.

Where a statute may or may not be, according to circumstances, within the limits of legislative authority, the existence of the circumstances necessary to support it must be presumed, and so it will be presumed in favor of No. 179, Acts of 1890, empowering a corporation to float logs and timber in White River, that this river is in fact navigable, for otherwise the act would be unconstitutional.

A person driving logs in a navigable stream is bound at all times to exercise the care of a prudent man to prevent injuries to riparian property, either by jams or other obstructions; but, if he exercises that care, any resulting damage to such property is *damnum absque injuria*, and he is not bound to build embankments to protect the land of riparian owners.

Where logs and flood wood are deposited upon the property of a riparian owner without fault of the person driving the logs in a navigable stream, the resulting damage to such owner is *damnum absque injuria*.

Where logs driven in a navigable stream are washed upon adjoining land without fault of the one driving them, he has the right to enter upon such land to reclaim the logs, doing no unnecessary damage.

Where defendants have the right to float logs in a navigable stream, riparian owners have an adequate remedy at law for injuries resulting from the defendants' negligence in the exercise of that right, whereby the logs were allowed to jam, so that the water, logs, and flood wood were thrown on their land, and hence they cannot maintain a bill in equity for relief.

The averment in a bill in equity that plaintiffs have no complete and adequate remedy at law is not admitted by demurrer to the bill.

APPEAL IN CHANCERY.   Heard on demurrer to the bill at the June Term, 1914, Windsor County, *Miles,* Chancellor.   Demurrer sustained, *pro forma,* and bill adjudged insufficient and dismissed, with costs to the defendants.   The plaintiffs appealed.

The allegations of the bill show the following facts.   On the second day of October, 1895, by deed of conveyance to them, duly

recorded in the land records of the town of Rochester, the plaintiffs became the conditional owners of a certain tract or parcel of land, with the appurtenances thereof, situated in the towns of Rochester and Pittsfield, in this State, and bounded as set forth in the bill; they at once entered into possession, and hitherto have occupied the same as a homestead and farm; and on March 23, 1908, they became and now are the sole owners of said lands and premises.

Quoting from the bill, the plaintiffs' said lands are bounded "on the west by lands, then of Beckwith and Parmenter, now of Kezer and Emerson." "The White River flows in a southerly direction along the westerly portion of said lands of your plaintiffs;" and "for many years last past that portion of said farm adjacent to said river, to wit, thirty acres thereof, has been under cultivation, and during all that time prior to the year 1912 the same was in a high state of cultivation and yielded valuable crops annually, and was of great value to your plaintiffs."

For many years prior to the date of the deed to the plaintiffs, the Fall Mountain Paper Company, a corporation under the laws of, and doing business in, the State of Vermont, was the owner of large tracts of timber land adjacent to White River, up-stream from the lands of the plaintiffs, and was there engaged in cutting the timber into logs. In the year 1890, the General Assembly of Vermont granted to that company certain privileges on this river, and from the time the enactment went into effect until the time when the company ceased to conduct business on that river as hereinafter stated, the company cut timber on its lands into logs and floated them down the river, claiming the right so to do under and by virtue of said enactment of the General Assembly, which enactment is averred to be a public law of the State.

Previous to the year 1897, the said lands of the plaintiffs had been damaged by the Fall Mountain Paper Company, by floating logs on the river in such a careless and negligent manner that the lands were thereby cut into by the logs and the water, and portions of the same were washed out while the logs were being floated; whereupon the company caused an embankment to be constructed along the bank of the stream adjacent to said lands, and so long as this embankment remained in good condition and repair, it afforded some protection to those lands against damage caused by floating logs.

Subsequent to the year mentioned, that company disposed of certain of its lands on this river to the International Paper Company, a corporation, assigning and transferring to it all such rights and privileges on the river as the first named company had, whereupon that company ceased cutting timber on those lands, or floating logs on the river.

Upon thus acquiring these properties and rights, the International Paper Company proceeded to exercise the right of floating logs on White River, claiming to have acquired such right from the Fall Mountain Paper Company, and for several years thereafter floated logs from points above the plaintiffs' lands, and so continued until the incorporation of the defendant Champlain Realty Company, as a subsidiary company. Thereupon certain of the properties which were of the Fall Mountain Paper Company, and such rights and privileges in and on White River as that company possessed previous to its disposition thereof to the International Paper Company, were transferred and assigned to the Champlain Realty Company, the latter then and there entering into possession of the properties.    This company floated logs, and exercised all such rights and privileges in and on the river as had been acquired by it, claiming as the successor of the Fall Mountain Paper Company, and thus continuing down to and including the year 1913.    During all the same time, the Champlain Realty Company has claimed and now claims the right to charge tolls and collect the same of all persons and corporations floating logs on any part of White River.

The embankment erected by the Fall Mountain Paper Company was kept in good condition and repair by each of the companies mentioned while engaged in floating logs on the river, and during all that time afforded some protection to the plaintiffs' lands, from injury occasioned by the floating of logs, until the year 1912.    During the spring and summer of that year, and while the Champlain Realty Company was engaged in floating logs, large jams of logs were by it carelessly and negligently suffered and permitted to form on the river below the plaintiffs' lands, causing the water to dam up, set back, and overflow large tracts of land above the plaintiffs' lands; and a large number of logs of the company, and a large quantity of flood wood and debris was washed off said lands farther up the stream and carried down the river and deposited on the plaintiffs' land, and much sand and gravel were also washed onto it.    During the same

time, a large quantity of said logs were thrown by the water, against the said embankment which was thereby broken and torn out, and the earth about it was washed away, and many large holes, depressions, and openings were made and formed in the plaintiffs' land. The company, by its agents and servants, then entered upon the plaintiffs' land and removed therefrom the logs thus deposited thereon, and in so doing dug up the soil and thereby greatly injured the land; whereby and solely by reason of the depositing of said logs, flood wood, debris, sand and gravel thereon, the lands of the plaintiffs were greatly injured in value, and for purposes of cultivation; and the making of holes, depressions. and openings, and the digging up of the soil, as above stated, greatly injured said lands, and a large portion of them was thereby rendered wholly useless and unfit for cultivation and the raising of crops, hitherto continuing.

This company floated logs down the river from above plaintiffs' lands in the spring and summer of 1913, in such a careless and negligent manner that a large number of logs were thrown against such portions of said embankment as then remained in position, which were thereby torn out and washed away. The damages resulting therefrom to the plaintiffs were similar to those above shown in the preceding year. The company has neglected and refused, and still 'neglects and refuses, to fill up the holes, depressions, and openings made in the plaintiffs' lands in the two years mentioned, and neglected and refused, and still neglects and refuses, to reconstruct said embankment in whole or in part, but has suffered and permitted said lands to remain in the damaged condition, and neglects and refuses to pay the plaintiffs any sum as damages for the injuries thereto.

Until an embankment sufficient fully to protect the plaintiffs' lands from injuries caused by floating logs, is erected along the bank of the river, and maintained in good and sufficient repair, logs can not be floated on the river from points above their lands, without doing damage to said lands by tearing out large portions of the soil, and causing large quantities of flood wood, debris, sand and gravel to be deposited thereon, which it is averred will work irreparable damage thereto. It is further averred that if the plaintiffs are obliged to build and maintain such an embankment there for that purpose, they will be put to great and disproportionate expense; that whenever their lands are covered with flood wood, debris, sand and gravel, they are put to

great and disproportionate expense in clearing the same of such substances, of which the American Realty Company is fully advised; that in order to recover damages for past injuries to their said lands, and for further injuries thereto, or either of them, the plaintiffs will be compelled to resort to a multiplicity of suits at law, unless a court of equity takes cognizance of the matters and things set forth in the bill; that it was the lawful duty of the several companies mentioned, during all the time they respectively floated logs on the river, and is now the duty of the defendant companies, to employ sufficient means to prevent injury to the plaintiffs' lands, and fully to protect them therefrom; that the Champlain Realty Company is the sole owner of said properties and rights by it acquired from the International Paper Company, and the American Realty Company is engaged in cutting timber and floating logs down the river in question for said Champlain Realty Company, which latter company will continue in such business and floating logs for years to come, unless restrained from so doing; and that the plaintiffs have no adequate remedy at law in the premises. The prayer is, that the Champlain Realty Company be decreed to pay to the plaintiffs such damages as they have suffered in the premises or may suffer during the pendency of this bill; that it be ordered and directed to construct along said river, adjacent to the plaintiffs' said lands, within a time limited, an embankment sufficient fully to protect said lands from injuries occasioned by floating logs on the river, or employ such other adequate means as are requisite and adequate for that purpose; that the Champlain Realty Company and the American Realty Company be enjoined and prohibited from further floating logs on the river from points above the lands of the plaintiffs, until said lands are protected from injury by such an embankment or other means employed for that purpose; and for general relief.

In substance, two causes of demurrer are assigned: the want of equity to sustain the jurisdiction of a court of equity; the plaintiffs have a good and sufficient remedy at law.

*Wallace Batchelder* for the plaintiffs.

*John C. Sherburne* for the defendants.

WATSON, J.    It will be noticed by the statement of the facts in the bill that the plaintiffs' lands are bounded on the west by lands of Kezer and Emerson; that "White River flows in a southerly direction along the westerly portion" of the plaintiffs' lands; and that the portion of their farm alleged to have been damaged by the floating of logs on the river, is "adjacent to said river." The import of the allegations in these respects may or may not be the same, in legal effect, as a statement that their land is bounded on the west by the river, or that their west line or boundary is along the river. There is no allegation as to where the east line of Kezer and Emerson's land is, with respect to the river. It was held in *Quinn* v. *Valiquette,* 80 Vt. 434, 68 Atl. 515, 14 L. R. A. (N. S.) 962, that the language used in equity pleadings is to be understood according to its natural import in the connection, and with reference to the subject-matter; that in equipoise, the construction is to be against the pleader, and that no intendments are to be made in favor of the pleader's case which do not naturally result from the facts alleged. Applying this rule of construction to the language of the bill, it can not be said that any part of the bed of the river is owned by the plaintiffs. As the case stands on the bill, therefore, no part of the bed of White River is owned by the plaintiffs, but the river runs southerly along the westerly side of their land, but not over it.

One of the chief geographical features of the State is, that its eastern border is washed by the Connecticut River; and it is a matter of historical knowledge that the Connecticut has always been a public highway upon which, in early times, a portion of the merchandise and productions of the eastern part of the State, including lumber, were transported in boats or otherwise; and it is of common knowledge that in more recent times it has been used as a great public highway for the floating of logs to places further south in this State, and to places in the State of Massachusetts. These facts, therefore, are judicially noticed. *Stephen's Dig. Ev.* (Chase's Ed.) 170-172.

This Court will also take judicial notice that White River is one of the larger rivers of the State, is non-tidal, and empties into the Connecticut at Hartford, this State; but whether it is a boatable stream in its natural state and therefore a public highway, especially as far up as the plaintiffs' farm, is a question of fact not alleged in the bill, and of which judicial notice is not here taken. *New England Trout and Salmon Club* v.

*Mather,* 68 Vt. 338, 35 Atl. 323, 33 L. R. A. 569.    It was held in
that case that boatable waters, within the meaning of the Consti-
tution, are waters that are of "common passage" as highways;
that the capability of use by the public for the purposes of
transportation and commerce, rather than the extent or manner
of such use, affords the criterion by which the navigability of a
river is to be determined; and that if it be capable in its natural
state of being used for purposes of commerce, carried on in any
mode, it is navigable in fact, and therefore is in our law a public
river or highway.    In support thereof, the case of *Brown* v.
*Chadbourne,* 31 Me. 9, 50 Am. Dec. 641, is noticed as a leading
case on the subject, wherein the true test to be applied in such
cases was held to be, whether the stream is inherently and in its
nature, capable of being used for the purposes of commerce, for
the floating of vessels, boats, rafts, or logs; and that when a
stream possesses such a character, the easement exists, leaving
to the owners of the bed, all other modes of use, not inconsistent
therewith.

While the general rule is, as stated in the *New England
Trout & Salmon Club* case, that waters above the flow of the tide
are, *prima facie,* private in use as well as in ownership, and the
burden of showing that a particular stream is boatable, is on the
person seeking to use it as such, (unless it be a case where the
court will take judicial notice of that fact,) yet in the case
at bar the bill alleges that in the year 1890, the General Assembly
of the State of Vermont granted certain privileges on the river in
question to the Fall Mountain Paper Company; that thenceforth
to the time of the commencement of this suit, that company and
its successors floated logs on the river, claiming the right so to do
under and by virtue of said enactment, which enactment is
averred to be a public law.    Counsel on both sides have treated
this statute as public in character, in the discussion of the case,
and consequently we treat it in the same way without consider-
ing whether it is so, and without regard to the real force of that
particular averment.

By §1 of the act mentioned, (Laws of 1890, No. 179),
the Fall Mountain Paper Company was "empowered to remove
rocks, flood wood and other obstructions from the bed and banks
of White River and its tributaries, excepting the first, second,
and third branches of said river, build piers for the purpose of
attaching booms thereto and shall build proper sluices or aprons

on dams to protect the same from damage, so as to facilitate the running of logs, ties, wood, timber or other lumber down said streams, and any other person or persons may use said streams for the purpose of floating logs, ties, wood, timber or other lumber upon the terms hereinafter named. And said Fall Mountain Paper Company and its successors are empowered to enter upon the bed of said White River and its tributaries, except the three tributaries last named, for the above purposes, subject to the liability of paying, or tendering, all damages caused thereby in the manner hereinafter provided.'' By §2, injuries or damages occasioned by the Fall Mountain Paper Company, or its successors, to land or property by reason of said improvements, shall be paid by the company or its successors, to the person or persons sustaining the damages; and if the parties cannot agree upon the amount of damages to be paid, said corporation shall prefer a petition to the judge of the probate court in the district in which the property is situated, who shall appoint three commissioners to hear and determine the matter; and if any damages shall accrue to a riparian owner by using the river or its tributaries, for the purpose of running logs, ties, etc., and the parties cannot agree upon the amount of such damages, the person or persons sustaining the damages may prefer a petition to the judge of the probate court for the appointment of commissioners to determine that question, and their decision in the matter shall be final and conclusive upon all parties. By §3, the Fall Mountain Paper Company and its successors are given the right to receive toll from all persons running logs, ties, etc., over the portion of the streams on which money has been expended by them.

In *Morgan* v. *King*, 35 N. Y. 354, 91 Am. Dec. 58, it was said that if prior to legislative enactment, the stream was private in use as in property, the Legislature could not take away the rights of those who were then riparian owners, nor subject such rights to a public use, created or authorized by the act itself, without compensation. In *Foster* v. *Stafford National Bank*, 57 Vt. 128, a statute, authorizing and empowering the persons named ''to make, maintain, and control gates at the outlet of Willoughby Lake for the purpose of saving the water in said lake,'' but not to raise it ''above the ordinary high-water mark of the last fifteen years,'' was held to be unconstitutional upon the ground that no provision was made for the ascertainment and

payment of the damages that might be occasioned by the entry upon and the occupation of the land of the defendant for the erection and maintenance of gates thereon, and the raising of the water in the lake.    The court said that the Constitution limits the right to take private property to cases where necessity requires it for a public use; and then it can be taken only on making just compensation to the owner.. In the *New England Trout & Salmon Club* case, the court said that unless the waters in question were boatable, they were not public, but private, and the State had no jurisdiction over them.    And it was there held that the statute then under consideration, in so far as it undertook to authorize the crossing of private lands to reach public waters, was unconstitutional, as authorizing the taking of private property for private use; that the right of eminent domain can never be exercised for a merely private purpose, however much the public utility may be subserved thereby.    See also *Adams* v. *Barney,* 25 Vt. 225.    But the Statute of 1890 does not undertake to delegate the power of eminent domain, nor does it contain provisions touching elements essential to the exercise of that power: the rights granted involve neither the question of necessity for public use, nor compensation to riparian owners for private property taken for public use in the establishment of a public easement in the stream to which the act relates.    *Foster* v. *Stafford National Bank,* noticed above.

It has been held that the Legislature can not make a stream navigable by declaring it to be so if in fact it is not.    *Olive* v. *State,* 86 Ala. 88, 5 South. 4 L. R. A. 33; *People ex rel. Ricks Water Co.* v. *Elk River Mill & L. Co.,* 107 Cal. 221, 40 Pac. 531, 48 Am. St. Rep. 125; *Kamm* v. *Normand,* 50 Or. 9, 91 Pac. 448, 11 L. R. A. (N. S.) 290, 126 Am. St. Rep. 698.    And in *Pound* v. *Turck,* 95 U. S. 459, 24 L. ed. 525, it was held that if a stream which empties into one of the great rivers of the country. is in fact navigable, the State may, for the purpose of developing the use of it, authorize the improvement of the navigation, until legislation on the subject by Congress.    See also *Falls Mfg. Co.* v. *Oconto River Improvement Co.,* 87 Wis. 134, 58 N. W. 257; *Tewksbury* v. *Schulenberg,* 41 Wis. 584; *Mashburn* v. *St. Joe Improvement Co.,* 19 Idaho 30, 113 Pac. 92, 35 L. R. A. (N. S.) 824; *Thompson* v. *Androscoggin River. Improvement Co.,* 58 N. H. 108.    In the case last cited, the court said there was nothing in the Constitution of the State, nor in the doctrines of the com-

mon law, to prevent the State or its agents from improving the navigation of the public rivers; and the mode and the extent of such improvements are to be determined by the Legislature.

No question is raised as to the validity of the Acts of 1890; but enough has been said in view of the holdings in the cases to which reference has been made, to justify us in treating White River as a boatable stream within the meaning of the law, in disposing of the case under consideration upon the demurrer; for otherwise that statute may be in violation of constitutional rights, and "if a statute may or may not be, according to circumstances, within the limits of legislative authority, the existence of the circumstances necessary to support it must be presumed." *Sweet* v. *Rechel*, 159 U. S. 380, 40 L. ed. 188, 16 Sup. Ct. 43; *Home Teleph. & Teleg. Co.* v. *Los Angeles*, 211 U. S. 265, 53 L. ed. 176, 29 Sup. Ct. 50; *State* v. *Peet*, 80 Vt. 449, 68 Atl. 661, 14 L. R. A. (N. S.) 677, 130 Am. St. Rep. 998.

Considering the stream as boatable in its natural state, the public, as well as the defendants under the provisions of the Acts of 1890, have the right to use it as a public highway for the floating of logs; and the rights of the riparian owners are subject to such use, if reasonably exercised. *Carter* v. *Thurston*, 58 N. H. 104, 42 Am. Rep. 584; *Collins* v. *Howard*, 65 N. H. 190, 18 Atl. 794; *Connecticut River Lumber Co.* v. *Olcott Falls Co.*, 65 N. H. 290, 21 Atl. 1090, 13 L. R. A. 826; *Dwinell* v. *Veazie*, 44 Me. 167, 69 Am. Dec. 94; *Lancey* v. *Clifford*, 54 Me. 487, 92 Am. Dec. 561.

The test of reasonableness, the want of which is negligence, is the conduct of a careful and prudent man in like circumstances. This is but the exercise of ordinary care, and is the true measure of requirement in such cases. The general rule is, that it is the duty of one driving or floating logs on a navigable stream to exercise ordinary care to prevent the same from doing damage to the property of riparian owners; that such duty requires one to take this degree of care to prevent logs put into the stream from creating jams and obstructions sufficient to force the waters out of their natural course, to the injury of riparian property; and that it is not confined to the time of actual driving, but exists at all times while the logs are in the stream. *Mandery* v. *Mississippi & R. River Boom Co.*, 105 Minn. 3, 116 N. W. 1027; *Coyne* v. *Mississippi & R. River Boom Co.*, 72 Minn. 533, 75 N. W. 748, 41 L. R. A. 494, 71 Am. St. Rep. 508; *Field*

v. *Apple River Log Driving Co.,* 67 Wis. 569, 31 N. W. 17; *Mitchell* v. *Lea Lumber Co.,* 43 Wash. 195, 86 Pac. 405, 10 Ann. Cas. 231, 9 L. R. A. (N. S.) 900; *White River Log, etc. Co.* v. *Nelson,* 45 Mich. 578, 8 N. W. 587; *Hot Springs Lumber & Mfg. Co.* v. *Revercomb,* 106 Va. 176, 55 S. E. 580, 9 L. R. A. (N. S.) 894.

The bill alleges that the Champlain Realty Company, by its agents and servants, entered upon the plaintiffs' said lands in the years of 1912 and 1913, and removed the logs deposited thereon by reason of large jams of logs carelessly and negligently suffered and permitted by that company to form in the river below said lands, whereby the water was dammed up, set back, and caused to overflow them, etc., and in so doing dug up the soil and thereby greatly injured the land. A person using a boatable stream for the floating of logs is not by law required to build embankments or other structures along the banks of riparian owners to protect them from wearing or washing away, or against injury from logs. *Hot Springs Lumber & Mfg. Co.* v. *Revercomb,* and *Field* v. *Apple River Log Driving Co.,* both cited above. If the logs, flood wood, etc., were deposited on the lands of the plaintiffs by reason of the negligence of the defendants, they are responsible for the resulting damages; but on the other hand if the logs, flood wood, etc., were deposited thereon without the fault of the defendants, the loss then suffered by the plaintiffs is *damnum absque injuria,* and affords no ground of action against the defendants.

By the common law, every owner of cattle is bound to keep them within his own possession, and if he fails to do so, he is liable for their trespasses upon the lands of other persons, whether inclosed or not. *Hurd* v. *Rutland & B. R. Co.,* 25 Vt. 116; *Keenan* v. *Cavanaugh,* 44 Vt. 268. But an exception to this rule has always been recognized in favor of a person lawfully driving domestic animals along a highway, if such animals, without fault on his part, escaped from his control upon adjoining unfenced lands. In such case if the animals be pursued and promptly brought back, the owner is not liable for the involuntary trespass on the land, nor for the herbage they may crop, *raptim et sparsim,* as they go along. Such casual trespassing is considered an inevitable incident to the right to use the highway. Mr. Justice Holmes, in his work on the Common Law, at page 118, says, "that if a man be driving cattle through a town,

and one of them goes into another man's house, and he follow him, trespass does not lie for this," citing authorities, among which is Popham, at page 162, where Justice Doderidge says the law is so "because it (the act) was involuntary, and a trespass ought to be done voluntarily, and so it is *injuria,* and a hurt to another, and so it is *damnum.*" 1 R. C. L. §42; *Dovaston* v. *Payne,* 2 H. Bl. 527, 2 Smith L. C. 213; *Stackpole* v. *Healy,* 16 Mass. 35, 8 Am. Dec. 121; *Hartford* v. *Brady,* 114 Mass. 466, 19 Am. Rep. 377; *McDonnell* v. *Pittsfield & North Adams R. R. Corp.,* 115 Mass. 564; *Amsteim* v. *Gardner,* 132 Mass. 28, 42 Am. Rep. 421; *Mills* v. *Stark,* 4 N. H. 512, 17 Am. Dec. 444; *Tonawanda R. Co.* v. *Munger,* 5 Denio. 255, 49 Am. Dec. 239; *Wood* v. *Snider,* 187 N. Y. 28, 79 N. E. 858, 12 L. R. A. (N. S.) 912.

In the case of *The Eleanor,* 2 Wheat. 345, 4 L. ed. 257, the Federal Supreme Court said: "And whatever may be the injury that casually results to an individual from the act of another while pursuing the reasonable exercise of an established right, it is his misfortune. The law pronounces it *damnum absque injuria,* and the individual from whose act it proceeds is liable neither at law nor in the *forum* of conscience. And the principal right necessarily carries with it also the means essential to its exercise." In *Sabin* v. *Vermont Central R. Co.,* 25 Vt. 363, where by necessary blasting of rocks done by the defendant in the construction of its road, fragments of rock were unavoidably thrown onto the adjoining land of the plaintiff. Thereon the court said: "As we have intimated, it is clear, that for blasting at improper seasons, thereby causing unnecessary damage to crops, and for doing it in an imprudent or unskillful manner, or for not removing the stone in due time,—and that must be considered the shortest time in which it can be done, and with the least injury to the land,—the party is entitled to his remedy in the proper form. But if the defendant's charter confers the right to do the act, of which, as we have said, there can be no doubt, it seems to us impossible to allow the action of trespass for the original act, thereby treating it as unlawful. And it is too well settled, to be now brought in question, that no mere omission, or want of care or skill, in doing a lawful act, will render such act a trespass by relation."

We think the rights of the owners of logs washed upon adjoining land without their fault, are governed by the same principles; and that the rule is correctly stated in the New

Hampshire case of *Carter* v. *Thurston,* (cited above,) as follows: "And the right of the public and of the defendants to the use of this stream for the purpose of floating their logs, involves the right of going upon the land of riparian owners for the purpose of reclaiming the logs that may have been washed ashore. Such incidental necessity neither enlarges nor diminishes the natural capacity of the stream, in a legal sense, nor in any way affects its public character. This right of pursuit and reclamation rests upon the same natural right as that which permits the owner of cattle to pursue into an adjoining field and recover his beasts straying from the highway; but in the pursuit and recovery of his cattle or his logs, the owner must do no unnecessary damage, and is responsible for any excess or abuse of his right. This right of reclaiming stranded logs is a common law right, a natural right, incident to the right of navigation." Since the only liability of the defendants, if any, is based upon their failure to exercise the requisite degree of care in pursuing a lawful right, an action at law to recover the damages proximately consequent on the breach of such legal duty affords the plaintiffs a full, complete, and adequate remedy; and having such remedy, they can not come into a court of equity. *Currier* v. *Rosebrooks,* 48 Vt. 34; *Durkee* v. *Durkee,* 59 Vt. 70, 8 Atl. 490.

It is urged, however, that this objection to the bill cannot be sustained, because the averment that the plaintiffs have no complete and adequate remedy at law is admitted by the demurrer, in support thereof relying upon the holding in *Weed* v. *Hunt,* 76 Vt. 212, 56 Atl. 980, and same case, 81 Vt. 302, 70 Atl. 564. In that case the question was whether the oratrix had a remedy at law in the State of Connecticut; and it was held on demurrer (in the answer) to the bill, that we were bound by the averment that she had not, as we could not take notice of the Connecticut statute recited in the answer, from which it seemed to the contrary. But this is not the general rule applicable when the court can take judicial notice of public law, not set forth in the bill. Lord Redesdale, speaking of the part of the bill intended to give jurisdiction of the suit to a court of equity by a general averment that the acts complained of are contrary to equity, and tend to the injury of the complainants, and that they have no remedy, or not a complete remedy, without the assistance of a court of equity, says this averment must be supported by the case shown in the bill, from which it must be apparent that the

court has jurisdiction. Mitf. Eq. Pl. (Tyler's Ed.) 141. Mr. Justice Story says this *jurisdictional clause* is wholly unnecessary, for it will not of itself give jurisdiction to the court; that if the case made by the bill be otherwise clearly of equitable jurisdiction, the court will sustain it, although the clause is omitted; that if, on the contrary, the case so made be not of equitable jurisdiction, the bill will be dismissed, notwithstanding such an averment is made in it; for the court can not assume jurisdiction, except upon cases and principles which clearly justify its interposition. Story Eq. Pl. §§34, 473.

*Pro forma decree affirmed and cause remanded.*